In re Subpoena Served Upon Eugene M. ZUCKERT, Secretary of the Air Force.

Misc. No. 7-61.

United States District Court District of Columbia.

April 25, 1961.

William H. Orrick, Jr., Donald B. Mac-Guineas, Harland F. Leathers, Dept. of Justice, Washington, D. C., for Zuckert.

Edward M. O'Brien of Speiser, Quinn & O'Brien and Jules M. Goldstein, New York City, for respondent Machin.

MATTHEWS, District Judge.

This is a motion of the Secretary of the Air Force to quash a subpoena for the taking of his deposition in the case of Machin v. United Aircraft Corporation (S.D.N.Y., Civil Action No. 141-91) on the ground that it is unreasonable and oppressive.

The setting surrounding this motion is alleged in substance as follows: The airplane crash out of which this action arose occurred on May 17, 1956, at Lowry Air Force Base, Denver, Colorado. The plaintiff, Jack Machin, at that time a navigator on active duty with the Air Force, was the sole survivor of the crash. The aircraft was a B-25 of World War II vintage and the propeller assemblies were manufactured by the defendant United Aircraft Corporation. The plaintiff sustained critical injuries including multiple fractures. As a result of his injuries he is now a paraplegic-amputee. He was hospitalized for a long time following the crash. He believes that the crash was caused by a defective propeller which made an engine overspeed and deprived the pilot of effective control of the airplane. On July 7, 1958, a letter was sent to the then Secretary of the Air Force requesting a copy of the entire Aircraft Accident Investigation Report. An Administrative Assistant to the Secretary refused to release the Report to the plaintiff but offered to provide a list of names

of witnesses who had testified before the Accident Investigation Board and enclosed a summary of the findings of the Board. On August 19, 1958, a letter was sent to said Assistant requesting the names of the witnesses who testified, together with permission to obtain copies of photographs and exhibits used by the witnesses in the investigation. Thereafter on September 2, 1958, the Assistant answered and included in his reply the names and latest addresses of fifteen witnesses who either had testified or given statements to the Accident Investigation Board, but he refused to provide the plaintiff with the photographs and exhibits. The plaintiff sent letters on November 17, 1959, to each of. the fifteen witnesses. Three answered that they saw the crash but nothing more while a fourth referred plaintiff to the Director of Flight Safety Research at Norton Air Force Base. The other eleven named witnesses did not reply or their letters were returned as undelivered.

Because of the difficulties in getting information from the witnesses, the plaintiff then planned to get information from the Air Force by means of taking the deposition upon written interrogatories of the Secretary of the Air Force under Rule 31 of the Federal Rules of Civil Procedure, 28 U.S.C.A. After serving a notice on adversary counsel, the plaintiff caused a subpoena duces tecum for the purpose of answering the written interrogatories to be served on the Secretary of the Air Force. Subsequently, answers to plaintiff's interrogatories were received in lieu of taking the testimony of the Secretary. Thereafter the Secretary was advised by letter from plaintiff's counsel that in view of the answers received it would be unnecessary for plaintiff to obtain a copy of the Accident Investigation Report. The plaintiff alleges that this was done in anticipation of obtaining full information from the witnesses; that plaintiff again wrote to the witnesses who had first answered and received the information herein previously referred to relating to their observations, that as to the remainder "it is obvious that they would, if called to testify, rely on their statements which are not accessible to plaintiff."

In June 1960 the plaintiff endeavored to obtain information pertinent to the tests made after the crash of the components of the aircraft involved. For instance a letter was directed by plaintiff to one Richard F. Gerwig at Norton Air Force Base in California, said letter asserting that plaintiff had been informed by the office of the Judge Advocate General at HG USAF that addressee is "one of the persons in charge of the results of tests made of the components of the above aircraft after the above crash." The reply from the office of The Judge Advocate General dated July 1960 states:

"Inasmuch as the test results which you request are contained in the Report of Aircraft Accident Investigation and constitute expressions of opinion by the personnel involved, we are not at liberty to release them since such reports are considered to be privileged by the Air Force."

In these circumstances the plaintiff seeks to obtain the Aircraft Accident Investigation Report by way of deposition and subpoena and the Secretary of the Air Force has filed the instant motion to quash the subpoena.

Rule 45(d) of the Federal Rules of Civil Procedure specifically provides for the issuance of such a subpoena as is involved here. But the Secretary of the Air Force asserts that the attempt to take his deposition "is not made in good faith, is contrary to an agreement made with plaintiff's counsel at the time the former Secretary answered written interrogatories and is therefore unreasonable and oppressive."

Under the subdivision (b) of Rule 45 the Court may quash or modify the subpoena if it is unreasonable and oppressive.

On his part the plaintiff denies any oppressiveness or embarrassment. He says in pertinent part:

"There is no 'oppressiveness' in a requirement to produce a document which has been prepared for several years, relates to an obsolete type of aircraft and deals with a matter on which all statutes of limitations have run, and which has been prepared, not as the result of this litigation, but under a general regulation of the Air Force, and finally, from which the Government has purportedly furnished some information to plaintiff * * *. There is no 'embarrassment' to the Government involved in the document if the prior statements of the Government representatives be true that no 'materiel failure' was found; if in fact there was 'materiel failure', embarrassment would result by virtue of disclosure of the prior untruth only. There is no 'harassment' in seeking out the truth, particularly when the truth is readily at hand."

Where a witness who has been subpoenaed files a motion to quash the subpoena on the ground that it is unreasonable and oppressive the criteria to be used by the Court involves a balancing of the need of the plaintiff for inspection with the harm and embarrassment which would result to the witness if the subpoena were allowed to stand and the document were produced. Eastern States Petroleum Co. Inc. v. Asiatic Petroleum Corporation, D.C.S.D.N.Y., 27 F.Supp. 121. Shawmut Inc. v. American Viscose Corp., D.C., 11 F.R.D. 562.

The Court believes that under the circumstances here the needs of the plaintiff outweigh the considerations assigned by the Secretary of the Air Force.

Despite the fact that the Secretary of the Air Force has neither asserted nor waived a claim of privilege as to the Aircraft Accident Investigation Report in question, extensive references have been made in this case to Air Force Regulation 62–14 as establishing the Report as a privileged document, and as having the force of law.

Paragraph 49 of Regulation 62–14 provides in pertinent part:

"49. Investigations of Aircraft Accidents and Incidents for Purposes Other Than Accident Prevention:

"a. *Privileged Reports*. In many instances the occurrence of an accident requires an investigation for purposes other than accident prevention. It is Air Force Policy that the reports listed in this subparagraph and their attachments will be used *only* to determine all factors related to aircraft accidents and incidents so that corrective action may be taken in the interest of accident prevention. The reports just mentioned and their attachments are prepared by, for, or at the direction of The Inspector General, USAF, and his assistants, and are therefore *privileged documents*. They may not be used as evidence or to obtain evidence for disciplinary action; as evidence in determining the misconduct or line-of-duty status of any personnel; as evidence before flying evaluation boards; as evidence to determine liability in claims against the Government; as evidence to determine pecuniary liability. Moreover, they may not be used or introduced as evidence in courts of law for any purpose. These reports and their attachments or copies and extracts will not be appended to or inclosed in any report or document, unless the sole purpose of the other reports or documents is to prevent aircraft accidents. the privileged reports referred to above are as follows:

"(1) Report of AF Aircraft Accident * * *".

It is asserted by the Secretary of the Air Force that the above paragraph shows that the material sought by the

subpoena is forbidden to the plaintiff by said Air Force Regulation.

A perusal of another portion of the Air Force Regulation, however, seems to indicate that a report of the kind under discussion may be released to private individuals if the proper authority gives permission. See Paragraph 52a of Air Force Regulation 62–14.

It is unnecessary here to determine the claim of the Secretary that the Air Force Regulation has the force of law. In passing, however, it is noted that the Secretary does not cite any law authorizing such regulation. There is a statute set out in 5 U.S.C.A. § 22 authorizing the prescribing of regulations concerning government documents, and it is this statute which generally has been cited as authority for regulations which limit the availability of records to the public. See, for example, Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846, and United States v. Reynolds, 345 U.S. 1, 4, 73 S.Ct. 528, 97 L.Ed. 727. But in 1958, after the Air Force Regulation was promulgated, this statute was amended by the addition of a significant sentence. The statute (5 U.S.C.A. § 22) is set forth below with the 1958 addition italicized:

> "The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it. *This section does not authorize withholding information from the public or limiting the availability of records to the public.*"

■ The purpose of the addition to 5 U.S.C.A. § 22 is set forth in House Report No. 1461 on H.R. 2767, 85th Congress, 2d Session, as follows (1958 U.S. Code Congressional and Administrative News, Vol. 2, p. 3352):

> "This bill would return section 22 of title 5 of the United States Code

to what appears to have been the original purpose for which it was enacted in 1789. The statute was codified in 1875 as section 161 of the Revised Statutes. Shortly thereafter the first evidence appeared of use of the law to withhold information from the public.

> "The law has been called an office 'housekeeping' statute, enacted to help General Washington get his administration underway by spelling out the authority for executive officials to set up offices and file Government documents. The documents involved are papers pertaining to the day-to-day business of Government which are not restricted under other specific laws nor classified as military information or secrets of state.

> "The first apparent use of the statute to deny information occurred in 1877 when a California newspaperman wanted to look at files of recommendations for Federal jobs to see who had been sponsored under the spoils system by officials from his State. The Department of Justice advised President Hayes that Department heads should not open their files to the reporter under the authority of title 5, United States Code, section 22.

> "The statute has been cited as authority to refuse information many other times since then—for example, in litigation involving the Secretary of Commerce and Labor in 1905 (25 Op.Atty.Gen. 326) and involving the Secretary of the Army in 1951 (Barclay v. U. S., hearings, pp. 2629–2643). In recent years, as the drive for free access to Government records has intensified, title 5, United States Code, section 22, has been cited more regularly (see below).

> "When Congress has determined that a specific area of information must be closed to the public, legislation has been enacted accomplishing this purpose. The laws are legion

which limit the public's right to know—income tax laws, for example, and those covering crop reports, trade secrets, inventions, and military matters.

"Where Congress has not acted, the executive officials have gradually moved in over the years. The 'housekeeping' statute (5 U.S.C. 22) has become a convenient blanket to hide anything Congress may have neglected or refused to include under specific secrecy laws.

"A parade of expert witnesses, whose testimony covers more than 500 pages of printed hearings, testified that title 5, United States Code, section 22, has been twisted from its original purpose as a 'housekeeping' statute into a claim of authority to keep information from the public and, even, from the Congress. * *

* * * * *

"The purpose of this bill is to correct that situation."

The Government argues that frank disclosures in air accident investigations will be hampered unless the Air Force can give assurance that testimony will not be disclosed or used for other purposes than flight safety. It should be noted, however, that such assurances cannot be given anyway because such reports have been held to be subject to discovery proceedings in cases in which the United States is a party as in Cresmer v. United States, D.C., 9 F.R.D. 203. Evans v. United States, D.C., 10 F.R.D. 255.

United Air Lines, Inc. v. United States, D.C., 186 F.Supp. 824.

According to the affidavit filed herein by the present Secretary of the Air Force he has not even read the subject Report. When and if he does, and personally considers the Report in the light of the plaintiff's predicament and needs he may well conclude to voluntarily give the report to plaintiff, particularly since in answering an interrogatory as to whether any military or state secrets are involved in the Report the Secretary's predecessor replied that "no classified material is contained in the Report". This answer suggests, therefore, that there is not involved the matter of a privilege against revealing military secrets—a privilege which is well established in the law of evidence. United States v. Reynolds, 345 U.S. 1, at page 7, 73 S.Ct. 528.

The plaintiff has been trying for several years to obtain a disclosure of the facts revealed by the investigation, including the tests made after the crash relative to the aircraft. Only in this way can the plaintiff hope to get at the real cause of the accident under the circumstances.

In the present posture of the instant matter no claim of privilege has been asserted or is being decided. The references to privilege in this memorandum are made because of the considerable discussion devoted to privilege in the papers herein.

I will sign an order denying the motion to quash the subpoena.