**STERLING NATIONAL BANK OF DAVIE, a national banking association, Plaintiff,**

v.

**William B. CAMP, Comptroller of the Currency, et al., Defendants.**

Misc. No. 82–69.

United States District Court
District of Columbia.
Jan. 9, 1970.

James J. Kenny, Kelly, Black, Black & Kenny, Miami, Fla., for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen., Dept. of Justice, Harland F. Leathers, William P. Arnold and Robert D. Bernstein, Attys., Dept. of Justice, John E. Shockey, Atty., Office of the Comp-

troller of the Currency, Washington, D. C., for defendants.

## MEMORANDUM

MATTHEWS, Senior District Judge.

A motion is before the Court by Thomas G. DeShazo, Deputy Comptroller of the Currency of the United States, to quash foreign subpoena No. 114–69. The ground of his motion is that as Deputy Comptroller he is prohibited from testifying or producing the documents called for in the subpoena.

In support of the motion an affidavit has been filed by William B. Camp, Comptroller of the Currency of the United States. It sets forth that in connection with litigation entitled Sterling National Bank of Davie v. William B. Camp, et al., now pending in the United States District Court for the Southern District of Florida, plaintiff has served upon Mr. DeShazo, the Deputy Comptroller of the Currency, a subpoena seeking the production of the following documents:

All documents, memoranda, letters, exhibits and reports (or copies thereof) in any way concerning the application for a charter for the Citizens National Bank of Davie (Florida), Citizens First National Bank of Davie (Florida), or Citizens Davie National Bank (Florida).

The mentioned affidavit then goes on to recite that pursuant to statute [1] the Comptroller has promulgated regulations with respect to the control of such documents as are described in the subpoena, and that under such regulations employees of the Comptroller are prohibited from testifying with respect to information obtained in or resulting from their official capacities and from furnishing documents of the Comptroller or copies thereof in compliance with a subpoena, order or otherwise, "without the prior written authorization of the Comptroller", that if the production of documents by an employee of the Comptroller is desired, an affidavit by the litigant or his attorney setting forth the interest of the litigant and the documents desired must be submitted to the Comptroller before authorization will be granted. When such authorization has not been granted by the Comptroller, the regulations provide that the employee subject to the subpoena or order shall appear in court and state that he is unable to comply with the subpoena or order by reason of these regulations.

The regulations relied on by the Comptroller are as follows:

12 C.F.R. § 4.16(b) providing in part:

(b) Except as specifically authorized by the Comptroller, the following documents, or portions thereof, are not available to the public:

\* \* \* \* \* \*

A document, or portion thereof, containing or related to an examination operating, or condition report prepared by, on behalf of, or for the use of, the Comptroller, relating to the affairs of any bank or affiliate thereof, bank holding company, or subsidiary thereof, broker, finance company, or any other person engaged, or proposing to engage, in the business of banking, extending credit, or managing or controlling banks.

12 C.F.R. § 4.18(a) providing as follows:

Except as provided in this part or as otherwise authorized by the Comptroller of the Currency, no employee of the Comptroller shall in any manner disclose or permit dis-

---

1. The statute in question reads:
   The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public. 5 U.S.C. § 301 (formerly 5 U.S.C. § 22).

closure of any confidential information to anyone other than an employee of the Comptroller properly entitled to such information for the performance of his official duties.

12 C.F.R. § 419 as to testimony and production of documents in court:

Employees of the Comptroller of the Currency are prohibited from testifying in court or otherwise with respect to information obtained in or resulting from their official capacities and are prohibited from furnishing documents of the Comptroller or copies thereof in compliance with a subpoena, order or otherwise, without the prior written authorization of the Comptroller. If the testimony of or the production of documents by an employee of the Comptroller is desired, an affidavit by the litigant or his attorney, setting forth the interest of the litigant, and the testimony or documents desired must be submitted to the Comptroller before authorization will be granted. When authorization to testify or to produce documents has not been granted by the Comptroller, the employee of the Comptroller to whom a subpoena or order has been directed shall appear in court and respectfully state that he is unable to comply further with the subpoena or order by reason of this section.

In this litigation the plaintiff has not complied with the last quoted regulation by submitting an affidavit to the Comptroller seeking authorization for use of the documents and the testimony of Mr. DeShazo. A similar regulation by the heads of government departments and agencies has been upheld. In United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951) the Supreme Court said of such a regulation:

When one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether subpoenas duces tecum will be willingly obeyed or challenged is obvious.

The United States Court of Appeals for the 5th Circuit in Davis v. Braswell Motor Freight Lines, Inc., 363 F.2d 600 (1966) dealt with a failure to "request use of the documents" from a department head, for the reason that "such a request would have been an exercise in futility." The Court responded that "[a]pproval of such an excuse, even if meritorious in a particular case, would defeat the purpose of the regulation to centralize the function of dispersing Board records in the head of the agency." The Court concluded that because of the failure to comply with the "simple requirement" of seeking permission, the District Court should have granted the Motion to quash the subpoena.

It is clear that precedent supports the instant motion to quash the subpoena. However, this is not to say that the Comptroller can shut off an appropriate judicial demand for the testimony and the documents sought. The question of whether the Comptroller may be required to disclose information relevant to the Florida litigation and contained in documents within his possession is a matter not here for adjudication.

The statute relied upon by the Comptroller, 5 U.S.C. § 22 (now 5 U.S.C. § 301) was amended by Congress in 1958 to add the following: "This section does not authorize withholding information from the public or limiting the availability of records to the public." 72 Stat. 547. See footnote 1 herein for the full text of this section. The purpose of the 1958 addition is set forth in House Report No. 1461 on H.R. 2767, 85th Congress, 2d Session as follows (1958 U.S.Code Congressional and Administrative News, Vol. 2, p. 3352):

This bill would return section 22 of title 5 of the United States Code to what appears to have been the original purpose for which it was enacted in

1789. The statute was codified in 1875 as section 161 of the Revised Statutes. Shortly thereafter the first evidence appeared of use of the law to withhold information from the public.

The law has been called an office "housekeeping" statute, enacted to help General Washington get his administration underway by spelling out the authority for executive officials to set up offices and file Government documents. The documents involved are papers pertaining to the day-to-day business of Government which are not restricted under other specific laws nor classified as military information or secrets of state.

The first apparent use of the statute to deny information occurred in 1877 when a California newspaperman wanted to look at files of recommendations for Federal jobs to see who had been sponsored under the spoils system by officials from his State. The Department of Justice advised President Hayes that Department heads should not open their files to the reporter under the authority of title 5, United States Code, section 22.

The statute has been cited as authority to refuse information many other times since then—for example, in litigation involving the Secretary of Commerce and Labor in 1905 (25 Op.Atty.Gen. 326) and involving the Secretary of the Army in 1951 (Barclay v. U. S., hearings, pp. 2629–2643). In recent years, as the drive for free access to Government records has intensified, title 5, United States Code, section 22, has been cited more regularly. * * *

When Congress has determined that a specific area of information must be closed to the public, legislation has been enacted accomplishing this purpose. The laws are legion which limit the public's right to know—income-tax laws, for example, and those covering crop reports, trade secrets, inventions, and military matters.

Where Congress has not acted, the executive officials have gradually moved in over the years. The "housekeeping" statute (5 U.S.C. 22) has become a convenient blanket to hide anything Congress may have neglected or refused to include under specific secrecy laws.

A parade of expert witnesses, whose testimony covers more than 500 pages of printed hearings, testified that title 5, United States Code, section 22, has been twisted from its original purpose as a "housekeeping" statute into a claim of authority to keep information from the public and, even, from the Congress. * * *

\* \* \* \* \* \*

The purpose of this bill is to correct that situation.

See also Clark R. Mollenhoff's book "Washington Cover-up" (1962).

On Thursday, January 29th, 1970 the Court will be constrained to sign an order quashing subpoena No. 114–69 unless prior thereto the plaintiff indicates by an affidavit filed herein that it has complied with the requirement set forth in 12 C.F.R. § 419 of filing with the Comptroller an affidavit setting forth the interest of the litigant and the testimony and documents desired.