Roy MARCOUX, Plaintiff,

v.

MID–STATES LIVESTOCK et al., Defendants.

Jim THOMPSON, Sr., Plaintiff,

v.

MID–STATES LIVESTOCK et al., Defendants.

Civ. A. No. 74CV555–W–3.

United States District Court, W. D. Missouri, W. D.

April 23, 1975.

William K. Waugh, Jr., James H. Ottman, Shook, Hardy & Bacon, Kansas City, Mo., for plaintiff.

Mary A. Schneider, Asst. U. S. Atty., Kansas City, Mo., Harland F. Leathers, Civ. Div., U. S. Dept. of Justice, David C. Shonka, Gen. Litigation Section, Civ. Div., U. S. Dept. of Justice, Washington, D. C., for Regional Administrator John R. Burt.

ORDER DENYING WITHOUT PREJUDICE PLAINTIFFS' "MOTION FOR AN ORDER COMPELLING PRODUCTION OF DOCUMENTS FOR INSPECTION AND ANSWERS TO QUESTIONS UNDER RULE 30"

WILLIAM H. BECKER, Chief Judge.

This is a proceeding in connection with the issuance of a subpoena *duces tecum* by this Court, commanding John R. Burt, Regional Administrator of the Tenth National Bank Region, to testify and produce certain documents, including reports and related materials ". . . prepared by the offices of the Comptroller of the Currency of the United States concerning the First National Bank of Eldora, Eldora, Iowa, its operations, and any or all of its shareholders, officers, directors, customers, depositors, debtors, creditors, agents, or employees from and after January 1, 1971, through October 5, 1973." The issuance and service of the subpoena *duces tecum* is part of the discovery effort being conducted by plaintiffs Marcoux and Thompson in two civil actions presently pending in the United States District Court for the Northern District of Iowa, Central Division. Those two cases are Marcoux v. Mid-States Livestock, Inc., et al., Civil Action No. 73–C–2054–C, and Thompson v. Mid-States Livestock, Inc., et al., Civil Action No. 73–C–2055–C. Both of these civil actions are against former officers and directors of the First National Bank of Eldora and others for pecuniary damages allegedly suffered by plaintiffs as a result of the defendants' alleged malfeasance.

A brief review of the events which culminated in the filing of plaintiffs' motion for production and motion to compel testimony is set forth hereinafter.

In the early part of 1974, plaintiffs Marcoux and Thompson administratively attempted to secure certain documents, materials and information from the Comptroller of the Currency in connection with two civil actions in the United states District Court for the Northern

District of Iowa.[1] Upon the failure of those efforts, plaintiffs served and filed on September 4, 1974, a notice to depose John R. Burt, Regional Administrator of the Tenth National Bank Region. This notice was filed in the District Court for the Northern District of Iowa. In the notice, the place and time for Mr. Burt's deposition was fixed at Kansas City, Missouri, on September 20, 1974, at which place and time Mr. Burt was directed to produce the documents, reports, and records described hereinabove.

On September 5, 1974, Kenneth Leaf, Chief National Bank Examiner, directed that all the records pertaining to the First National Bank of Eldora in the Regional Office in Kansas City, Missouri, be forwarded to Washington, D. C., for safekeeping.

On September 10, 1974, plaintiffs obtained the subpoena *duces tecum* of this Court, therein commanding Mr. Burt to appear on September 20, 1974, for a deposition and to produce documents, reports, and records described hereinabove.

By mailgram dated September 17, 1974, James E. Smith, Comptroller of the Currency, directed Mr. Burt to appear in response to the subpoena, but to decline to testify. Acting in accordance with those instructions, Mr. Burt appeared at the deposition and stated that he was prohibited from testifying and was unable to produce the subpoenaed documents, reports, and records.

Thereafter, on September 26, 1974, plaintiffs filed herein their "Motion for an Order Compelling Production of Documents for Inspection and Answer to Questions Under Rule 30," therein requesting that this Court enter " . . . an order requiring a witness (John Burt) to produce documents for inspection and to answer questions propounded, pursuant to subpoena duces tecum issued by this Court under date of September 10, 1974." In support thereof, plaintiffs assert that the witness has "failed to take the proper protective steps" under Rule 45(b) of the Federal Rules of Civil Procedure by filing a motion to quash or modify the subpoena, and that " . . . the witness and his superior cannot now assert the privilege, if such ever existed." In support of their position, counsel for plaintiffs rely on the single case of Pleasant Hill Bank v. United States, 58 F.R.D. 97 (W.D.Mo.1973).[2]

---

1. Section 4.19 of Chapter 12 of the Code of Federal Regulations pertinently provides, in part, that "[i]f the testimony of or the production of documents by an employee or former employee of the Comptroller is desired, an affidavit by the litigant or his attorney, setting forth the interest of the litigant and the testimony or documents desired must be submitted to the Comptroller before authorization [by the Comptroller to release the information] will be granted." The lodging of an administrative request must be made to the Comptroller before a party may resort to relief in the courts. Sterling National Bank of Davie v. Camp, 307 F.Supp. 778 (D.D.C.1970); Progress National Bank v. Security Mutual Casualty Co., Civil Action No. C69–163 (N.D.Ohio April 22, 1971). In the case at bar, plaintiffs' attorneys attempted to comply with Section 4.19 by letter and affidavit to the Comptroller dated May 2, 1974. In a response dated May 23, 1974, the Deputy Comptroller of the Currency advised plaintiffs' attorneys that their administrative request was being denied on the grounds that they had failed to explain " . . . why the information contained therein is essential to your cause and cannot be obtained from other sources . . .." In a second letter to the Comptroller dated June 26, 1974, counsel for plaintiffs stated their reasons for requesting the desired documents. In his response dated July 30, 1974, the Deputy Comptroller informed plaintiffs' attorneys that " . . . the Comptroller has decided to disclose pertinent portions of examination reports of First National Bank of Eldora, Iowa, and certain correspondence of this office relating to the bank, to counsel for use only in connection with the captioned litigation *in camera* and under protective order of the Court."

2. Plaintiffs' present reliance on the case of Pleasant Hill Bank v. United States, 58 F. R.D. 97 (W.D.Mo.1973) is misplaced. That

Following the granting of a requested extension of time, counsel for Mr. Burt filed herein on December 24, 1974, a motion for a protective order, including therewith suggestions in opposition to plaintiffs' motion to compel testimony and motion for the production of requested documents. In the extensive and thorough suggestions in opposition, counsel for Mr. Burt review the authorities asserted to be applicable, contending that Mr. Burt " . . . may not be compelled to give testimony on official information in derogation of valid regulations and the specific order of his superior, the Comptroller of the Currency, issued pursuant thereto." The statutes relied upon are Section 301, Title 5, and Section 481, Title 12, United States Code. The regulations relied upon are Sections 4.16(b)(2), 4.18(a) and 4.19, Chapter 12 of the Code of Federal Regulations. The primary cases relied upon by counsel for Mr. Burt are Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846 (1900); United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951); and Saunders v. The Great Western Sugar Co., 396 F.2d 794 (10th Cir. 1968).

On December 24, 1974, James E. Smith, Comptroller of the Currency, filed herein a "Certificate," therein stating that he has ". . . legal custody and control of all records of the Office of the Comptroller of the Currency relating to national banking associations, including records pertaining [to] the First National Bank of Eldora, Eldora, Iowa, and the correspondence and memoranda relating to a request in connection with the captioned litigation seeking discovery of this office . . . ."

For reasons to be set forth hereinafter, it is hereby concluded that plaintiffs'

"Motion for an Order Compelling Production of Documents for Inspection and Answers to Questions Under Rule 30" should be denied without prejudice.

Section 301, Title 5, United States Code (formerly 5 U.S.C. § 22) is commonly referred to as an office "housekeeping" statute. It was originally enacted in 1789 to assist General Washington in establishing his administration by spelling out the authority for executive officials to set up offices and file documents. *See,* H.R. No. 1461, 85th Cong., 2nd Sess., 2 U.S.Code Congressional and Administrative News, p. 3352 (1958). Section 301 presently reads as follows:

"The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public."

The last sentence of Section 301 was added by Congress in 1958. P.L. 85–619, 72 Stat. 547. By this amendment, Congress sought to correct an evolving situation whereby the statute had " . . . been twisted from its original purpose as a 'housekeeping' statute into a claim of authority to keep information from the public and, even, from the Congress." H.R. No. 1461, 85th Cong., 2d Sess., 2 U.S.Code Congressional and Administrative News, p. 3352 (1958); *see also,* Sterling National Bank of Davie v. Camp, 307 F.Supp. 778, 780–781 (D.D.C.1970); In re Zuckert, 28 F.R.D. 29, 33 (D.D.C.1961), affirmed in part, 114 U.S.App.D.C. 335,

case was an action against the United States for conversion of fixtures and equipment. Plaintiff served upon the defendant notices of deposition and requested production of documents. The defendant resisted the discovery efforts on the grounds, among others, that the requested documents were exempt

from disclosure under the Freedom of Information Act. The Court held that the documents were not privileged, even though the documents may have been exempt from disclosure to the general public under the Freedom of Information Act.

316 F.2d 336 (1963), cert. denied, 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963), appeal after remand, 118 U.S. App.D.C. 410, 336 F.2d 914 (1964).[3]

Pursuant to Section 301, Sections 4.-16(b)(2), 4.18(a) and 4.19 of Chapter 12 of the Code of Federal Regulations have been promulgated. Section 4.-6(b)(2) provides that certain documents prepared by or for the use of the Comptroller pertaining to the affairs of any bank or persons engaged in the banking business, shall not be available to the public except as specifically authorized by the Comptroller. Section 4.18(a) provides that any employee or former employee of the Comptroller shall not disclose any confidential information to any person other than another employee of the Comptroller except as otherwise authorized by the Comptroller. Section 4.19, which is the principal regulation relied upon by Mr. Burt, provides as follows:

> "Employees or former employees of the Comptroller of the Currency are prohibited from testifying in court or otherwise with respect to information obtained in or resulting from their official capacities and are prohibited from furnishing documents of the Comptroller or copies thereof in compliance with a subpoena, order or otherwise, without the prior written authorization of the Comptroller. If the testimony of or the production of documents by an employee or former employee of the Comptroller is desired, an affidavit by the litigant or his attorney, setting forth the interest of the litigant and the testimony or documents desired must be submitted to the Comptroller before authorization will be granted. The employee's or former employee's authorization to

testify or produce is limited to the authority granted by the Comptroller. When authorization to testify or to produce documents has not been granted by the Comptroller, the employee or former employee of the Comptroller to whom a subpoena or order has been directed shall appear in court and respectfully state that he is unable to comply further with the subpoena or order by reason of this section."

The validity, application and construction of departmental regulations which have been promulgated under the housekeeping statute to control the public dissemination of agency information and documents have been the subject of only two United States Supreme Court cases.

In Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846 (1900), the Supreme Court reviewed a regulation adopted pursuant to then Section 22, Title 5, United States Code (now 5 U.S.C. § 301) relating to agency records in the custody of the collectors of internal revenue. On the facts of the case, the Supreme Court held that a head of a department " . . . may take from a subordinate . . . all discretion as to permitting the records in his custody to be used for any other purpose than the collection of the revenue, and reserve for his own determination all matters of that character." Boske v. Comingore, 177 U.S. 469, 470, 20 S.Ct. 705, 706, 44 L.Ed. 850, 851 (1900).

The Supreme Court undertook a similar review of a Department of Justice regulation in the landmark case of United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951). Petitioner Roger Touhy, an inmate at the Illinois State Penitentiary, instituted a habeas corpus proceeding

---

3. Prior to the 1958 amendment to Section 301, Title 5, United States Code, cases in which the United States was a party litigant were in hopeless conflict on the question whether the statute provided the Government a privilege to withhold documents otherwise discoverable. 8 Wright and Miller, Federal Practice and Procedure, § 2019, p. 165 (1970); Asbill and Snell, Scope of Discovery against the United States, 7 Vand.L. Rev. 582, 590–591 (1954).

against the Warden of that institution. In the course of that proceeding a subpoena *duces tecum* was issued and served upon George R. McSwain, agent in charge of the Federal Bureau of Investigation at Chicago, Illinois, requiring the production of certain Bureau records concerning the petitioner. Agent McSwain refused to produce the requested records and was adjudicated in contempt of the court. On appeal the Court of Appeals reversed the contempt adjudication and the Supreme Court upheld the reversal.

In the *Touhy* case, the Supreme Court limited its review to the sole question whether the Attorney General of the United States possessed the power, under then Section 22, Title 5, United States Code, to promulgate Order 3229, thereby reserving to himself the authority to determine when records of the Department of Justice should be produced. On this narrow question, the Supreme Court held that its ruling in the *Boske* case controlled. In a concurring opinion, Mr. Justice Frankfurter emphasized the narrow scope of the Supreme Court's ruling:

> " . . . In joining the Court's opinion, I assume . . . that the Attorney General can be reached by legal process. Though he may be so reached, what disclosures he may be compelled to make is another matter. It will of course be open to him to raise those issues of privilege from testimonial compulsion which the Court rightly holds are not before us now. But unless the Attorney General's amenability to process is impliedly recognized we should candidly face the issue of the immunity pertaining to the information which is here sought. To hold now that the Attorney General is empowered to forbid his subordinates, though within a court's jurisdiction, to produce documents and to

hold later that the Attorney General himself cannot in any event be procedurally reached would be to apply a fox-hunting theory of justice that ought to make Bentham's skeleton rattle." United States ex rel. Touhy v. Ragen, 340 U.S. 462, 472–473, 71 S.Ct. 416, 421, 95 L.Ed. 417, 424 (1951) (concurring opinion).

Moreover, all that the rulings in the *Boske* and *Touhy* cases established is that a subordinate official will not be compelled to testify and produce documents in private litigation where a department or agency regulation forbids such disclosure except upon express permission of the head of the respective department or agency. 4 Moore, Federal Practice, ¶ 26.61[5.–1] p. 26–285 (2nd ed. 1974). The validity of the regulations in the *Boske* and *Touhy* cases was *not* upheld " . . . on the ground that the regulations enacted a privilege for official information but rather on the ground that, in furtherance of the good housekeeping envisaged by the statute, they reasonably relegated to the *head* of the department concerned the question whether privilege would be claimed." 8 Wigmore, Evidence, § 2378, p. 801 (McNaughton rev. 1961); *see also,* Committee for Nuclear Responsibility, Inc. v. Seaborg, 149 U.S.App.D.C. 380, 463 F.2d 788, 793 (1971). The Supreme Court did " . . . not reach the question whether disclosure can and will be compelled from the head of the department itself." 4 Moore, Federal Practice, ¶ 26.61[5.–1] p. 26–285 (2nd ed. 1974).

■ Thus, the case at bar *does not* present the question whether the Comptroller of the Currency has presented sufficient reasons to justify and support a refusal to produce requested information upon the basis of a formal and proper claim of privilege.[4] Rather, the sole issue to be determined by this Court

---

4. If the person in control of requested documents, pertaining to the Office of the Comptroller of the Currency, is not an employee

or former employee of the Comptroller, a different situation is presented. Under such circumstances, the Comptroller would appar-

is whether the Comptroller of the Currency possesses the power to promulgate departmental regulations, thereby reserving to himself the authority to determine when department documents, records and information may be disclosed to the public. On this narrow issue, it is hereby concluded that this case is controlled by the rulings of the Supreme Court in United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951) and Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846 (1900). *Accord*, Saunders v. The Great Western Sugar Co., 396 F. 2d 794 (10th Cir. 1968); Jackson v. Allen Industries, 250 F.2d 629 (6th Cir. 1958), cert. denied, 356 U.S. 972, 78 S. Ct. 1135, 2 L.Ed.2d 1146 (1958); Appeal of the United States Securities and Exchange Commission, 226 F.2d 501 (6th Cir. 1955); Bank Line Ltd. v. United States, 163 F.2d 133 (2nd Cir. 1947); Ex parte Sackett, 74 F.2d 922 (9th Cir. 1935); North Carolina v. Carr, 264 F.Supp. 75 (W.D.N.C.1967), appeal dismissed as moot, 386 F.2d 129 (4th Cir. 1967); Hubbard v. Southern Railway Co., 179 F.Supp. 244 (M.D.Ga. 1959); Walling v. Comet Carriers, Inc., 3 F.R.D. 442 (S.D.N.Y.1944); United States ex rel. Bayarsky v. Brooks, 51 F. Supp. 974 (D.N.J.1943).

The information requested by plaintiffs appears to include documents, or portions thereof, "containing or related to an examination, operation, or condition report prepared by, on behalf of, or by the use of, the Comptroller, relating to the affairs of" the First National Bank of Eldora. *See*, 12 C.F.R. § 4.-16(b)(2) (1974). Sections 4.16(b)(2), 4.18(a) and 4.19 of Chapter 12 of the Code of Federal Regulations appear to have been promulgated pursuant to the authority vested in the Comptroller un-

der Section 301, Title 5, United States Code.[5] In addition, the regulations in question were apparently designed and have the lawful and legitimate purpose of centralizing in the Comptroller the sole authority to determine whether a subpoena *duces tecum* will be willingly obeyed or challenged. United States ex rel. Touhy v. Ragen, 340 U.S. 462, 468, 71 S.Ct. 416, 95 L.Ed. 417, 422 (1951); *accord*, Cates v. LTV Aerospace Corp., 480 F.2d 620, 623 (5th Cir. 1973); Committee for Nuclear Responsibility, Inc. v. Seaborg, 146 U.S.App.D.C. 393, 463 F.2d 788, 793 (D.C.Cir.1971). Under these circumstances, it is found that the regulations are valid.

In the specific context of the case at bar, these regulations have the force and effect of law, thereby preventing this Court from punishing a subordinate official for conforming to that law, or commanding disobedience by a subordinate official thereto. Appeal of the United States Securities and Exchange Commission, 226 F.2d 501, 518 (6th Cir. 1955); Ex parte Sackett, 74 F.2d 922, 923 (9th Cir. 1935); 8 Wigmore, Evidence, § 2378, p. 802 (McNaughton rev. 1961); *cf.* Public Utilities Commission of California v. United States, 355 U.S. 534, 542–543, 78 S.Ct. 446, 2 L.Ed.2d 470, 477, reh. denied, 356 U.S. 925, 78 S.Ct. 713, 2 L.Ed.2d 760 (1958); Standard Oil Co. v. Johnson, 316 U.S. 481, 484, 62 S.Ct. 1168, 86 L.Ed. 1611, 1615 (1942).

For these separate and independent reasons, plaintiffs' motion to compel testimony and motion to produce documents should be denied without prejudice. Miami National Bank v. The Pennsylvania Insurance Co., et al., Civil Action No. 68–514–Civ. EC (S.D.Fla. April 7, 1969).

ently be powerless under the regulations herein under review to prevent private disclosure, and he would most likely be compelled to file a formal claim of privilege (assuming he has standing) in order to attempt to prevent disclosure of the requested infor-

mation. *See, e. g.,* Overby v. United States Fidelity and Guaranty Co., 224 F.2d 158 (5th Cir. 1955).

5. *See also,* 5 U.S.C. § 552.

An additional question presented by the facts in this case, although not raised by the parties, concerns the power of this Court to require a non-party witness to produce documents and records located outside the territorial jurisdiction of this Court.

Prior to the filing of plaintiffs' notice to depose Mr. Burt on September 4, 1974, the documents and materials requested by plaintiffs were located in the Tenth National Bank Region Office in Kansas City, Missouri. On September 5, 1974, those documents and materials were removed from the Regional Office and forwarded to Washington, D. C., at the direction of the Chief National Bank Examiner. Although the circumstances surrounding the transmittal of the requested documents and materials to Washington, D. C., may disclose a tacit attempt to avoid the jurisdiction of this Court, the Comptroller gained no advantage by the anticipatory removal of the documents and materials from this judicial district. The plaintiffs may give notice to take the deposition of the Comptroller, and in connection therewith, procure the service of a subpoena *duces tecum* upon the Comptroller in Washington, D. C. Saunders v. The Great Western Sugar Co., 396 F.2d 794, 795 (10th Cir. 1968).

It is undisputed that the documents, reports, and records described hereinabove are presently in the custody and control of the Comptroller of the Currency in Washington, D. C. Thus, it is apparent that these materials are now located beyond the territorial limits of this judicial district. Under these circumstances, it is concluded that, in the absence of exceptional circumstances not shown to exist in the case at bar, this Court is without power to compel the Comptroller, who is not a party to this action, to produce requested materials which are in his custody and are located outside the jurisdictional boundaries of this Court. Cates v. LTV Aerospace Corp., 480 F.2d 620, 623 (5th Cir. 1973); Chessman v. Teets, 239 F.2d 205, 213 (9th Cir. 1956); Elder-Beerman Stores Corp. v. Federated Department Stores, Inc., 45 F.R.D. 515, 518 (S.D.N.Y.1968).

For this separate and independent reason, it is alternatively concluded that plaintiffs' motion to compel production of the requested materials should be denied.

Having thoroughly reviewed the record presented in this proceeding, it is concluded that plaintiffs' "Motion for an Order Compelling Production of Documents for Inspection and Answers to Questions under Rule 30" should be denied without prejudice to the right of the plaintiffs to seek and secure the requested documents and information from the Comptroller of the Currency in Washington, D. C. If a subpoena *duces tecum* is issued and served upon the Comptroller in Washington, D. C., and a challenge is made thereto by the lodging of a formal and proper claim of privilege by the Comptroller himself, the present case might then be in a proper posture for the United States District Court for the District of Columbia to determine whether the reasons presented for failing to produce the requested information are insufficient and the circumstances are appropriate for the claim of privilege. United States v. Reynolds, 345 U.S. 1, 7–8, 73 S.Ct. 528, 97 L.Ed. 727, 733, 32 A.L.R.2d 382 (1953).

For all the foregoing reasons, it is therefore

Ordered that plaintiffs' "Motion for an Order Compelling Production of Documents for Inspection and Answers to Questions under Rule 30" be, and it is hereby, denied without prejudice.