Frank DENNY

v.

Gerald V. CAREY, John A. Bunting, James F. Bodine, First Pennsylvania Corporation and Peat, Marwick, Mitchell & Co.

Civ. A. No. 76–259.

United States District Court,
E. D. Pennsylvania.

March 21, 1978.

Alfred A. Gollatz, Asst. U. S. Atty., Philadelphia, Pa., for Board of Governors of Federal Reserve System, amicus curiae.

Emanuel G. Weiss, Philadelphia, Pa., for plaintiff.

Jos. W. Swain, Jr., and Robt. W. Sayre, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Plaintiff in this class action claims that First Pennsylvania Corporation ("First Penn"), a registered Pennsylvania bank holding company; Peat, Marwick, Mitchell & Co. ("PMM"), First Penn's accountants; and several individuals violated state tort law and federal securities statutes by improper recording of income and losses with respect to First Penn's securities. Plaintiff has moved pursuant to F.R.Civ.P. 37(a) to compel production of, *inter alia*, specified sections of a December 31, 1974, report by the Board of Governors of the Federal Reserve System (the "Board") based on an inspection of First Penn, a copy of which report was furnished to First Penn. First Penn, PMM and the Board (which has filed a brief as *amicus curiae*) oppose discovery

of this report on the ground that it is absolutely privileged. Plaintiff argues that because First Penn has given a copy of this report to PMM, any privilege that may have existed has been waived as a matter of law. We reject both these positions and hold that we must inspect *in camera* the report in order to determine whether it is protected from discovery by the common-law governmental privilege asserted by the Board.

## I. Plaintiff's Request from Board:

■ The Federal Housekeeping Statute, 5 U.S.C. § 301, authorizes the head of each executive department to prescribe regulations governing the procedure by which its records will be made available to the public. Pursuant to that statute, the Board has promulgated regulations requiring that requests for access to Board records be submitted in writing to the Secretary of the Board. 12 C.F.R. § 261.4(d). The validity of similar departmental regulations centralizing the authority to determine whether a request for documents will be complied with has been upheld judicially. *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951); *Marcoux v. Mid-States Livestock*, 66 F.R.D. 573 (W.D.Mo.1975). When a party seeking discovery from such departments has not complied with the regulations, a motion for discovery of such material must be denied. *Marcoux v. Mid-States Livestock, supra; Sterling National Bank of Davie v. Camp*, 307 F.Supp. 778 (D.D.C.1970).

■ Plaintiff has not complied strictly with the procedure mandated by the Code of Federal Regulations. Rather, he made an oral request for specified sections of the report at a meeting with a member of the Board's legal division. This request was responded to by a January 19, 1978, letter from Philip E. Coldwell, a Board member, who noted the lack of strict compliance but also observed that the Board's counsel had been aware of plaintiff's request and asserted the privilege. In that letter, Coldwell stated it was the Board's understanding that the issue of plaintiff's entitlement to the report was before us and made clear its intention to be bound by our determination. We believe that the Board is bound by this letter. Consequently, while we are disturbed at the plaintiff's failure to adhere to the procedure mandated in the Code of Federal Regulations, we hold that the Board has waived any right to assert that non-compliance as a ground for not disclosing the report. We are aided in reaching that conclusion by our certainty that plaintiff has sought the report in a way that comports with the purpose of the Federal Housekeeping Statute and the regulations promulgated thereunder, *i. e.*, centralized decision-making as to disclosure, and that the decision to assert the privilege has indeed been made by the Board. To require plaintiff to petition the Board would be to demand an empty formality, the only effect of which would be further delay. We consider the January 19, 1978, letter a proper and timely assertion of the privilege.[1]

■ Implicit in our determination that the Board has waived any right it had to require strict compliance with its regulations by plaintiff is a conclusion that this regulatory scheme does not impose a jurisdictional limitation on our consideration of the Board's privilege claim. If adherence to these procedures were necessary to confer jurisdiction, compliance of course could not be waived. *See* F.R.Civ.P. 12(h)(3); 2A Moore's *Federal Practice* ¶ 8.08, at 1644 & n. 2 (1974). We know of no case suggesting that courts lack jurisdiction to determine

---

1. We were somewhat mystified by the position taken by the Board in its *amicus* brief, which was filed before the plaintiff made any direct request of the Board. Argument by counsel and an affidavit from Board vice chairman Stephen S. Gardner both took the seemingly inconsistent positions (1) that plaintiff had not petitioned the Board for access to the reports, so that it was unsure which portions of its reports were sought and which it would be willing to disclose, and (2) that the reports were privileged as a matter of law. Now that plaintiff has made a request of the Board and the Board has waived any rights it has as to the form of that request, however, the Board's assertion of privilege is timely.

the applicability of government privilege as a consequence of the failure of the party seeking the records to comply with the valid procedure.

We hold that it is the "formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer," *United States v. Reynolds*, 345 U.S. 1, 7–8, 73 S.Ct. 528, 531–532, 97 L.Ed. 727 (1953), which confers upon us jurisdiction to rule on that claim. As a Board member speaking for the Board and asserting the privilege on the basis of personal consideration, Coldwell was the "head of the department" as that terminology applies to the Board.

Once we have jurisdiction, it follows that the head of the department asserting the privilege can waive any right of the department to have the regulations promulgated by it followed. *See Overby v. United States Fidelity and Guaranty Co.*, 224 F.2d 158 (5th Cir. 1955), in which the Acting Secretary of the Treasury apparently asserted the privilege directly after the plaintiff filed a motion to require a bank president to produce reports by bank examiners, *id.* at 160.

## II. Privilege:

The Board and defendants cite several sources of authority for the proposition that the report is absolutely privileged from discovery. Underlying all their arguments is the assertion that disclosure of the report would undermine the important policy of confidentiality in communications between the Board and banks and impair the effectiveness of bank examination and regulation by the Board. We find none of the authorities to establish any absolute privilege, however; none of them prohibits, and we construe some of them to mandate, that we examine the report *in camera* upon the claim of privilege, in order to determine, so far as we are able, the consequences of granting plaintiff's motion upon this litigation and upon the Board's supervisory activity.

It is true that reports prepared by bank regulatory bodies are beyond the scope of the Freedom of Information Act, 5 U.S.C. § 552(b)(8). Exemption from the Freedom of Information Act, however, does not create independently any evidentiary privilege; the effect of such exclusion, rather, is only to permit the withholding of these categories of information from the public generally. *Kerr v. United States District Court for Northern District of California*, 511 F.2d 192 (9th Cir. 1975), *aff'd*, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *Cooney v. Sun Shipbuilding & Drydock Co.*, 288 F.Supp. 708 (E.D.Pa.1968). The other statutory authority invoked by the Board pertains merely to the procedural aspect of discovery. Congress ended any doubt as to whether this statute should affect the scope of discoverable records by amending it in 1958 to read, "This section does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301; *see also* 8 Wigmore, *Evidence* § 2378, at 802–03 (McNaughton ed. 1961).

We recognize of course that such a privilege exists and in certain cases discharges the government and its component parts from the requirements to disclose information imposed upon private citizens and organizations. But the very cases cited by the Board and defendants suggest that this privilege differs fundamentally from those evidentiary privileges, such as the attorney-client privilege, which make certain material immune from discovery, in that the government's privilege represents "an adjustment between important but competing interests", *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966), *aff'd sub nom. V.E.B. Carl Zeiss, Jena v. Clark*, 128 U.S.App.D.C. 10, 384 F.2d 979, *cert. denied*, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967), whose precise boundaries must be determined, at least at this stage of the case-law development, on a case-by-case basis. "Thus, when the privilege is claimed, it is necessary to balance interests to determine whether disclosure would be more injurious to the consultative function of government than non-disclosure

would be to the private litigant's defense." *United States v. Article of Drug Consisting of 30 Individually Cartoned Jars, More or Less,* 43 F.R.D. 181, 190 (D.Del.1967). We conclude that the "balancing approach", necessitating close examination of the government interest in non-disclosure and the interest of the party seeking disclosure, demands in this case an *in camera* examination of the material. *See* 2 Weinstein, *Evidence* ¶ 509[05], at 509–39 (1976); *contra,* 8 Wigmore *Evidence* § 2378, at 807 (McNaughton ed. 1961). Since we know very little about how the material sought in this case weighs upon both sides of this balance, to uphold the claim of government privilege without further examination would be to permit in effect the governmental agency to determine the extent of the privilege. It is emphatically the role of the judiciary to arrive at that determination. *United States v. Nixon,* 418 U.S. 683, 705, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), quoting *Marbury v. Madison,* 1 Cranch 137, 177, 5 U.S. 137, 2 L.Ed. 60 (1803); *United States v. Reynolds,* 345 U.S. 1, 8, 73 S.Ct. 528, 97 L.Ed. 727 (1953).

In *Bank of America National Trust & Savings Association v. Douglas,* 70 App.D.C. 221, 105 F.2d 100 (1939), cited by the Board, the court discussed at length the policy underpinnings of the governmental privilege as it applies to bank regulatory agencies and held that reports by bank examiners were confidential and need not be disclosed by the bank. We read that decision narrowly, however, in light of our determination that the scope of this privilege should be determined on an ad hoc basis, and consider the court's reasoning correct only insofar as it found that the subpoenas, seeking discovery of various materials covering a ten-year period, were unreasonably voluminous. *Id.* at 228–29, 105 F.2d at 107–08. Similarly, we construe the court's reversal of an order requiring production of documents in *Overby v. United States Fidelity & Guaranty Co., supra,* as limited to the facts of that case, where the court concluded that the documents sought were not pertinent to the litigation, 224 F.2d at 163. Indeed, in that case the court explicit-

ly declined to reconcile the competing policies of disclosure and of governmental secrecy and to rule on the privilege claim.

The Board also relies on the decision in *United States v. Provident National Bank,* 41 F.R.D. 209 (E.D.Pa.1966), in which Chief Judge Clary held privileged certain reports prepared and filed by bank examiners of the Comptroller of the Currency. As we read the *Provident National Bank* decision, it is strong authority for our conclusion that an *in camera* inspection is necessary in this case. Most obviously, the court ruled on the privilege asserted by the Comptroller only after such an examination. More importantly, however, the documents held undiscoverable in that case on the basis of a policy balancing differed fundamentally from the report in issue in this case, and hence the result does not control the outcome here. First, the privilege was held in *Provident National Bank* to exempt from discovery confidential reports sent to the Comptroller by examiners; the report which the bank received, analogous to the report in issue in our case, was ordered produced by the court. Second, the court concluded after inspection that the confidential "reports add no new relevant facts not in the body of the report." *Id.* at 210. We have no idea what facts relevant to this litigation might be added by discovery of the Board's report. Moreover, we regard plaintiff's representation that he seeks in the report evidence of the defendants' knowledge of fraudulent activities in order to establish scienter, *see Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), as sufficient to require our examination of the report. If the report does contain such evidence and it is not available elsewhere, plaintiff will have a weighty interest in disclosure.

## III. *Waiver:*

Plaintiff contends that whatever privilege may have attached to the material sought in this motion was waived when First Penn turned over copies of the Board's report to PMM. We disagree. It is well established that the "privilege belongs

to the Government and must be asserted by it; it can neither be claimed nor waived by a private party." *United States v. Reynolds*, 345 U.S. 1, 7, 73 S.Ct. 528, 532, 97 L.Ed. 727 (1953) (footnotes omitted). *See also Overby v. United States Fidelity & Guaranty Co.*, 224 F.2d at 163; *United States v. Provident National Bank*, 41 F.R.D. at 210; 2 Weinstein, *Evidence* ¶ 509[04], at 509–33 (1976) (quoting *United States v. Reynolds, supra* ); Rule 509, Proposed Federal Rules of Evidence, Advisory Committee's Note, Subdivision (e), 56 F.R.D. 183, 254 (1972).[2] The statutory scheme of federal bank regulation makes it clear that copies of the Board's reports may be furnished to bank officers, without suggesting that those reports thereby leave the ownership and control of the Board. 12 U.S.C. § 1326. The cases uniformly have assumed without discussion that governmental agencies can properly assert that their reports are privileged although the discovery sought is of copies in the hands of banks. *E. g., Overby v. United States Fidelity & Guaranty Co., supra* ; *Bank of America National Trust & Savings Assn. v. Douglas, supra.*

We hold therefore that, as a matter of law, First Penn could not waive any governmental privilege, and we do not reach the issue of whether a bank's giving a report by a bank regulatory agency to its accountant constitutes waiver.[3]

For the reasons set forth in this opinion, we will order an *in camera* inspection of those portions of the Board's report dated December 31, 1974, which plaintiff specified in his September 9, 1977, letter to the Board's senior attorney and as to which Coldwell asserted governmental privilege in his January 9, 1977, letter. We will consider in that examination what damage, if any, would be done to the bank regulatory process by permitting discovery of this report to plaintiff (under protective order)[4] and the relevance of this material to plaintiff's case, in light of the considerable discovery of related documents which has already been ordered. We will rule on the issue of privilege after that examination.

**2.** Indeed, earlier in this litigation plaintiff entered into a stipulation, which we approved, providing for discovery of reports by the Comptroller of the Currency, despite the objections of First Penn that such documents were privileged. We approved that stipulation on the ground that any privilege attaching to those reports belonged to and had been waived by the Comptroller. To hold that First Penn could waive the privilege as to the reports now at issue would be inconsistent.

**3.** Plaintiff does not appear to argue that the Board's giving a copy of the report to First Penn, as the federal statute, bank regulatory scheme and the nature of the report seemingly contemplate, constituted waiver by the Board. Plaintiff has not shown any facts that would suggest the Board gave a copy of its report to

First Penn under any circumstances other than those of confidentiality, and hence has not met its burden of proof in establishing such waiver. *See Overby v. United States Fidelity & Guaranty Co.*, 224 U.S. at 163.

**4.** We are and will remain sensitive to the importance of secrecy in bank-examiner communications to the smooth and effective functioning of the bank regulatory system. We are not so convinced as the Board's counsel, however, that the granting of plaintiff's motion would have enormous impact on the accessibility of the regulatory agencies' files to litigants generally, since we view the issue of privilege as one that must be determined on a case-by-case basis.