INTERSTATE PRODUCTION CREDIT ASSOCIATION, a federally chartered corporation, Plaintiff,

v.

FIREMAN'S FUND INSURANCE COMPANY, a California corporation, Defendant.

Civ. No. 87–1417–FR.

United States District Court, District of Oregon.

Nov. 7, 1989.

Barry P. Caplan, Richard G. Spier, Sussman, Shank, Wapnick, Caplan & Stiles, Portland, Or., for plaintiff.

James L. Knoll, Loren D. Podwill, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., for defendant.

Charles H. Turner, U.S. Atty., Judith D. Kobbervig, Asst. U.S. Atty., Portland, Or., Brenda R. Cosner, Elizabeth M. Dean, Farm Credit Admin., McLean, Va., for the U.S.

## OPINION

FRYE, Judge:

The matters before the court are the following discovery motions:

1) the motion to compel discovery (# 55) of defendant, Fireman's Fund Insurance Company (Fireman's);

2) the motion for a protective order (# 66) of the United States of America; and

3) the motion for leave to file a supplemental memorandum (# 70) of plaintiff, Interstate Production Credit Association (IPCA).

## BACKGROUND

In this action, IPCA seeks payment of $10 million under a Farm Credit Services Blanket Bond, Bond No. HF 640 1060 (the Bond), issued by Fireman's Fund to IPCA's predecessor in interest, Northwest Livestock Production Credit Association (NLPCA). IPCA is a non-profit corporation under the Farm Credit Act of 1971 (Farm Credit Act), 12 U.S.C. §§ 2001 *et seq.* IPCA provides agricultural loans to its members throughout the Northwest. The Bond was in effect from January 1, 1984 through June 22, 1985.

The Bond covers, among other things, losses incurred through the dishonest or fraudulent acts of IPCA "employees." IPCA alleges that it suffered a loss in excess of $10 million by reason of falsified loan documents which John C. Courtright submitted on behalf of Courtright Cattle Company (CCC) while Courtright was a director of NLPCA.

Courtright became a director of NLPCA in 1982. Courtright and CCC (which he controlled) received loans from NLPCA before and during the time when Courtright was a director. Courtright has admitted that beginning in late 1984, he misrepresented the number of cattle owned by CCC in order to collateralize loans and loan renewals.[1] IPCA alleges that NLPCA issued and renewed loans to CCC based on these false representations. Courtright has pleaded guilty to criminal fraud charges arising from this incident.

In November, 1988, this court granted Fireman's motion to bifurcate coverage issues for discovery and summary judgment purposes. Subsequently, the court denied the cross-motions of the parties for summary judgment on coverage issues. 706 F.Supp. 1405.

---

1. IPCA contends that Courtright began to submit fraudulent documents sometime in 1981.

## ANALYSIS AND RULING

### 1. *Motion for Leave to File a Supplemental Memorandum*

IPCA moves for leave to file a supplemental memorandum on the grounds that Fireman's raised new issues in its reply memorandum. Fireman's has filed a memorandum in opposition to this motion, which includes material responding to the merits of IPCA's supplemental memorandum.

Under Local Rule 220-3(c), the court may grant leave to file a supplemental memorandum. This is a matter committed to the discretion of the court. In this case, the court finds that IPCA's supplemental memorandum and Fireman's memorandum in opposition to the supplemental memorandum contain material which is helpful to the court in considering the complex issues in Fireman's motion to compel. Therefore, the court grants leave to IPCA to file its supplemental memorandum, and the court will consider both the supplemental memorandum and Fireman's opposition in making its rulings.

### 2. *Motion for Protective Order*

 The United States moves for a protective order prohibiting IPCA from producing to Fireman's certain information which is contained in documents in the possession of IPCA.[2] The documents in question are credit reviews either conducted or adopted by the Farm Credit Administration (FCA), an independent agency in the executive branch of the federal government. The FCA contends that IPCA is prohibited by federal regulations from releasing this information, and that Fireman's must fully comply with administrative procedures in order to obtain the information. Neither the United States nor the FCA is a party to this action.

The FCA is a regulatory agency which is responsible for the examination of the banks and associations chartered under the Farm Credit Act. The FCA's regulatory responsibilities are similar to those exercised by the Comptroller of the currency and the Federal Deposit Insurance Corporation with respect to commercial banks. Each production credit association (PCA) in the Farm Credit System is also subject to supervision by a Federal Intermediate Credit Bank (FICB), which generates a yearly report based on an examination of the PCA. Prior to 1986, the FCA did not examine IPCA or generate its own report regarding IPCA, but adopted the yearly report generated by the FICB for the Spokane region.[3] From 1986 to the present, the FCA has conducted its own examination and report regarding IPCA.

The FCA has promulgated regulations which control the release of official information in 12 C.F.R. § 602. Section 602.-289(a) provides that "FCA reports of examinations or such other reports generated or adopted by the FCA, or any documents related thereto are the property of the FCA and are not to be disclosed to any person without the FCA's consent." Section 602.-289(b) prohibits a PCA served with a demand to produce confidential FCA documents or information from releasing the documents without the FCA's consent. Section 602.283(b) states that in order to obtain the FCA's consent:

> the requesting party or his or her counsel shall submit a letter to the Chairman setting forth the title of the case, the forum, the requesting party's interest in the case, a summary of the issues in the litigation, the reasons for the request, and a showing that the desired ... documents, or information are not reasonably available from any other source.

Fireman's requested by a letter dated September 6, 1988 that the FCA disclose examination reports pertaining to IPCA and to the Courtright loans for the years 1980 to the present. After Fireman's executed a protective order, the FCA released portions of nine credit review reports to

---

**2.** The United States has also filed a Suggestion of Interest in the protection of government information which Fireman's has moved to compel IPCA to produce. Fireman's motion to compel concerns this information, as well as other information and documents in the possession of IPCA.

**3.** For ease of reference, the court refers to IPCA and its predecessor NLPCA collectively as IPCA.

Fireman's. Seven of these reports were reports generated by the FICB and adopted by the FCA, and two of these reports were generated by the FCA.

The FCA redacted the names of individuals and businesses who borrowed funds from IPCA, other than Courtright and CCC. The FCA also withheld any appendices to the reports which pertained to borrowers other than Courtright and CCC. The FCA also redacted unspecified "other information" from the reports based upon the deliberative process privilege.

In May, 1989, Fireman's submitted a follow-up request for 1) the unredacted copies of the reports produced by the FCA, together with all exhibits and attachments; 2) all work papers generated in preparation of such reports; and 3) all supervisory letters and documents relating to supervisory plans for the NLPCA and IPCA from 1980 to the present. The FCA responded by a letter dated June 30, 1989 requesting that Fireman's provide additional material showing why release of the information sought would be in the best interests of the FCA and the public, and why the information is necessary to the issues in this action.[4]

The FCA contends that the court should require Fireman's to complete the administrative procedure before ordering production of the information requested by Fireman's. The FCA also contends that the court cannot compel production of the information by a party other than the FCA. Fireman's contends that this court has the power to order IPCA to produce the requested information, and that it would be futile to wait any longer for the FCA to act.

The federal courts have consistently ruled that a court may not order an institution such as IPCA to produce information in violation of regulations such as 12 C.F.R. § 602.289. *See Federal Home Loan Bank Bd. v. Superior Court of Ariz.*, 494 F.Supp. 924, 927 (D.Ariz.1980) (decided under analogous regulations); *Colonial Savings and Loan Ass'n v. St. Paul Fire and Marine Ins. Co.*, 89 F.R.D. 481, 483 (D.Kan.1980).

■ In order to secure information within the scope of regulations such as section 602.289, a litigant must comply with agency regulations regarding discovery requests. *Denny v. Carey*, 78 F.R.D. 370, 372 (E.D.Pa.1978). If the agency refuses to produce the information after completion of this process, the litigant may move to compel production by the agency. *Id.* at 373. In the present case, it is not certain whether Fireman's has completed the process required by the FCA. Moreoover, Fireman's has moved to compel only IPCA, and not the FCA, to produce the documents.

Therefore, this court is barred from ordering IPCA to produce the documents within the scope of section 602.289. The question whether the FCA should be ordered to produce the documents is not properly before the court. Accordingly, the court grants the FCA's motion for a protective order preventing IPCA from producing information or documents within the scope of section 602.289.[5]

### 3. *Motion to Compel*

Fireman's seeks an order compelling IPCA to produce additional documents in response to Fireman's second request for production. The relevant requests and responses are as follows:

*Request No. 1*: Complete loan files for loans made from 1980 through 1985 to the ten largest borrowers of the NWLPCA and IPCA (excluding the Courtright loans) during the years 1980 through 1985.

*Request No. 2*: Complete loan files for loans made from 1980 through 1985 to all directors and/or associate directors of

---

4. Fireman's provided such a letter, dated July 21, 1989 (Ex.D. to affidavit of Loren D. Podwill). The record does not reveal whether FCA has taken any action after receiving this letter.

5. Some of the information which Fireman's has requested from IPCA and the FCA is not covered by section 602.289. The issues relating to such information are discussed in Section 3 of this opinion.

the NWLPCA and IPCA (excluding John Courtright) who served during the years 1980 through 1985.

*Response to Request Nos. 1 & 2*: IPCA interprets this request as pertaining to the Portland Service Center of IPCA. IPCA objects to this request. Under regulations of the Farm Credit Administration, particularly 12 CFR § 618.8300—.8320, federal law imposes limitations on IPCA and other entities within the Farm Credit System on disclosure of information concerning borrowers or members. IPCA further objects on the basis that the information sought is not admissible and is not likely to lead to discovery of admissible evidence.

*Request No. 3*: Complete and unredacted reports, examinations, or reviews of the NWLPCA and IPCA conducted by the Farm Credit Administration, Federal Intermediate Credit Bank of Spokane, or any other governmental or quasi-governmental regulatory agency for the years 1980 through 1988, together with all work papers and correspondence relating the said reports, examinations, or reviews.

*Response to Request No. 3*: IPCA interprets this request as pertaining to the Portland Service Center of IPCA. IPCA produced to Fireman's Fund on May 1, 1989 the following documents (confidential borrower information redacted):

1. Credit Review of NW Livestock PCA by FICB of Spokane as of February 14, 1980.

2. Credit Review of NW Livestock PCA by FICB of Spokane as of February 19, 1981.

3. Credit Review of NW Livestock PCA by FICB of Spokane as of February 18, 1982.

4. Review Report (FICB) 2/18/82—5/12/83

5. Interim Review as of 2/2/84 (FICB)

6. 1984 Annual Review report FICB 9/9/83 to 11/29/84

IPCA will produce photocopies of correspondence relating to the FICB Credit Reviews for 1980 through 1984 to the

extent they have not already been produced within the above Credit Reviews and Reports. Work paper relating to the FICB Credit Reviews for 1980 through 1984 are no longer available. IPCA will not produce the 1986 FICB Credit Review and reports covering periods on or after January, 1986, based on work product privilege.

IPCA incorporates its responses to Request Nos. 1–2, above, in relation to borrower and member information.

IPCA further objects on the basis that reports, examinations or reviews of the NWLPCA and IPCA by the Farm Credit Administration or any other governmental or quasi-governmental regulatory agencies for the years 1980–88 are property of that entity and cannot be produced, pursuant to 12 CFR 602.289. Farm Credit Administration has already produced certain redacted material to defendant. IPCA further objects on the basis that the information sought is not admissible and is not likely to lead to discovery of admissible evidence.

In addition, Fireman's seeks to require IPCA to produce: 1) all documents prepared both before and after January, 1986 in the regular course of business regarding the Courtright loans and default, including accounting information and annual reviews; 2) a letter from Rod Olson to James Cannon, with all exhibits and attachments; 3) correspondence, memoranda and other documents prepared by Olson and his staff after January, 1986 regarding the Courtright loans and IPCA and/or NLPCA; and 5) a culpability study prepared by the law firm of Sussman, Shank.

With respect to Request No. 3, and any other request that concerns reports of the FCA or FICB, such information is not discoverable from IPCA without the permission of the FCA. Any request for further disclosure of this information must be pursued through the FCA. To the extent that Request No. 3 concerns information that was not generated or adopted by the FCA, IPCA has indicated either that it will produce the documents (i.e., correspondence) or that the documents are no longer avail-

able (i.e., work papers). Therefore, the court will not grant Fireman's motion as to Request No. 3 at this time.

■ With respect to Request Nos. 1 and 2, Fireman's contends that it must have access to information regarding loans to other directors and other large borrowers in order to establish that the Courtright loans were treated consistently with other loans and that Courtright's status as a director did not play any role in the loan process. Fireman's anticipates that the evidence will show that although certain regulations, policies and procedures were not followed in regard to the Courtright loans, similar lapses occurred in the administration of other, non-director loans.

IPCA relies on regulations contained in 12 C.F.R. §§ 618.8300—618.8320 which limit a PCA's ability to disclose information regarding its borrowers. Section 618.-8320(a) states:

> Except as provided in paragraph (b) of this section, the directors, officers, and employees of every bank and association shall hold in strict confidence all information regarding the character, credit standing, and property of borrowers and applicants for loans. They shall not exhibit or quote the following documents: Loan applications; supplementary statements by applicants; letters and statements relative to the character, credit standing, and property of borrowers and applicants; recommendations of loan committees; and reports of inspectors, fieldmen, investigators, and appraisers.

Subsection (b) of section 618.8320 sets out a list of situations when disclosure is allowed, including disclosure to authorized bank examiners, disclosure of impersonal statistical information, disclosure with the consent of the borrower, and disclosure in litigation between a borrower and the PCA.

Section 618.8330(a) states:

> If a director, officer or employee of any association or bank is summoned as a witness in litigation to which neither the Government nor any Farm Credit organization is a party, for the purpose of testifying or producing documentary evidence with respect to matters which he is precluded by these regulations to disclose, he shall arrange, if possible, with the attorney who obtained the summons, to be excused from testifying. If not excused, he shall appear in response to the summons but, before testifying or producing documentary evidence as to confidential information, he shall respectfully advise the court of these regulations against disclosing such information and respectfully request that its confidential nature be safeguarded. After so doing, he may then testify or produce documentary evidence as to such information only to the extent and under the conditions directed by the court.

The regulations do not specifically address the present situation, in which a PCA is a party, but the borrowers whose files are in question are not parties to the litigation. The regulations indicate, however, that a PCA can be ordered by a court to disclose confidential information covered by the regulations, provided that the confidential nature of the information is safeguarded.

The case law indicates that a plaintiff cannot prevent discovery by asserting the confidentiality of information which he has put into issue in the lawsuit. *Sneirson v. Chemical Bank*, 108 F.R.D. 159, 162 (D.Del.1985). IPCA instituted this suit and must prove that its loss occurred as a result of Courtright's actions and not its own negligence.

■ However, the information in question relates to non-party borrowers who have a reasonable expectation of confidentiality based on 12 C.F.R. §§ 618.8300—618.8320. Disclosure of such information should not be ordered unless it is highly relevant, necessary to the moving party's case, and cannot be obtained by other means. *Freeman v. Seligson*, 405 F.2d 1326, 1336 (D.C.Cir.1968).

This court has previously ruled that Fireman's bond provides coverage in this case only if Courtright's fraudulent acts were committed while he was performing functions as a director or while acting in his capacity as a director. Fireman's argues

that discovery of the files for loans made to IPCA directors and to IPCA's ten largest borrowers will help Fireman's to establish that the underwriting and credit administration problems found with the Courtright loans were present in other loans, and that the loss was not due to Courtright's status as a director.

Fireman's has already received a substantial amount of discovery which concerns the problems with underwriting and credit administration at IPCA, including examination reports of the FCA and FICB.[6] The examination reports discuss such problems in detail, including information regarding particular loans. With respect to loans other than the Courtright loans, the names of the borrowers have been redacted, but substantial information remains regarding the nature of the loans and the problems discovered by the examiners.

Discovery of the loan files would provide Fireman's with the background information as to such loans and the names of the borrowers. However, the background information would be largely cumulative, given the information already in Fireman's possession, as to the nature of the problems found by the examiners. Disclosure of the names of the borrowers would help Fireman's to coordinate the information in the various reports, but Fireman's could determine whether the loans discussed in the reports were among the largest loans or were made to directors through other discovery methods, such as interrogatories, without disclosure of the names of the borrowers.

Therefore, the court finds that Fireman's does not have a need for the information contained in the loan files sought in Request Nos. 1 and 2 which is sufficiently compelling to overcome the confidentiality interests of the borrowers.

The remaining issues in Fireman's motion to compel concern documents which were created after January, 1986. IPCA contends that these documents are protected by the attorney-client and work product privileges. IPCA has submitted the affidavit of attorney Steven Poquette, which states that as soon as IPCA learned of Courtright's disappearance on January 21, 1986, IPCA anticipated extensive litigation to protect IPCA's interests and to collect as much as possible of the debts owed by Courtright and CCC. These efforts included not only the present claim against Fireman's, but also an unsuccessful attempt to force the borrower into bankruptcy, the establishment of a receivership for CCC, and the bankruptcy petitions of CCC and Mary Courtright. Although IPCA did not file its proof of claim with Fireman's until January, 1987, IPCA gave notice of the claim in February, 1986.

Fed.R.Civ.P. 26(b)(3) sets out the work product privilege:

> Subject to the provisions of subdivision (b)(4) of this rule [regarding expert witnesses], a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The party who asserts the work product privilege has the burden of establishing that the requested material was prepared in anticipation of litigation. *Feldman v. Pioneer Petroleum, Inc.,* 87 F.R.D. 86, 88 (W.D.Okla.1980). Fireman's asserts

---

6. Copies of these reports have been provided to the court under seal, and the court has conducted an *in camera* inspection.

that IPCA has asserted the work product privilege as to some documents that were prepared before January 21, 1986. Since it is IPCA's position that it had no knowledge of Courtright's misdeeds before that date, such documents could not have been prepared in anticipation of this or any related litigation, and thus are not work product.

IPCA has submitted uncontradicted evidence that as soon as it learned of Courtright's disappearance on January 21, 1986, it anticipated and began preparing for extensive litigation to protect IPCA's rights and interests. The court finds that materials prepared in anticipation of either this action or the other proceedings related to the Courtright and CCC loans constitute work product, unless they were prepared in the regular course of business. The work product doctrine does not apply to material generated in the regular course of business, but only to material generated primarily for use in litigation and material that would not have been generated but for the imminence of litigation. *Matter of Fischel*, 557 F.2d 209 (9th Cir.1977).

It appears that IPCA mentioned or discussed the Courtright loans and default in certain documents, such as periodic reports and accounting records, which are generated by IPCA in the regular course of business. The fact that such documents mention subjects which are related to litigation does not make such documents work product. The documents which may fall into this category are not described with specificity in the record, but IPCA is required to produce such documents unless they are covered by some other valid privilege or objection.

Fireman's also seeks other, unspecified correspondence, memoranda and other documents prepared by Olson and his staff after January, 1986. Without further information regarding the nature of these documents, the court cannot determine whether they are privileged. In addition, Fireman's has not made a showing that it is unable without substantial hardship to gather the information in such documents by other means.

■ Fireman's seeks production of a letter dated September 10, 1986 from Rod Olson, Executive Vice President of FICB, to James Cannon, Vice President–Credit, Farm Credit Corporation of America, along with all exhibits and attachments to the letter. IPCA has submitted the letter for *in camera* review by the court. The letter consists primarily of a chronology of the events related to the Courtright loans. Some of the exhibits to the letter have been produced to Fireman's, in whole or in part.

IPCA contends that the letter and exhibits are work product, and that the privilege was not waived by disclosure to Cannon because the Farm Credit Corporation of America shared common interests with IPCA. The courts have recognized a "common interest doctrine" which prevents disclosure to certain closely related or allied persons from waiving privileges. *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1466 (11th Cir.1984). Under some circumstances, the close relationship between the entities in the Farm Credit System may constitute a common interest which prevents disclosure from being deemed a waiver. For instance, the FICB and FCA have been intimately involved in the investigation and litigation related to the Courtright loans, and communications made by IPCA to these entities do not constitute a waiver of any privilege.

However, Olson testified in his deposition that he prepared the letter of September 10, 1986 in order to give information to the chief executive officers of the Farm Credit banks across the country, so that those officers could answer questions generated by the media attention given to the Courtright disappearance. (Exhibit F to Affidavit of Loren Podwill, p. 10.) This indicates that the information in the letter was disseminated more widely than the common interest doctrine would allow, in some cases to the public. The letter does not express any intent to keep its contents or the exhibits confidential. Therefore, the court finds that IPCA has waived any privileges with respect to the Olson letter and exhibits.[7]

■ The final item in controversy is a culpability study dated September 15, 1986, which was prepared by the law firm of Sussman, Shank, IPCA's counsel in this action. This document consists of a sixty-seven page report, plus extensive exhibits and appendices, which include summaries of interviews with potential witnesses. The study evaluates the culpability and potential liability of Courtright, IPCA, FICB and FCA. The cover page of the study states:

> This report is confidential and was prepared exclusively for and at the specific request of our clients, and is submitted solely to their directors for their exclusive review and use. This report and all supporting documents and written material is subject to the work-product and attorney/client privileges and is not discoverable.

While not all material prepared by an attorney for a client is privileged, the court concludes after *in camera* review that the culpability study, along with its exhibits and appendices, is covered by the attorney-client and work product privileges. The court also finds that Fireman's has not made a sufficient showing that it is unable to secure factual information contained in the study through other avenues. Therefore, the motion to compel is denied as to the culpability study.

## CONCLUSION

The motion of IPCA for leave to file a supplemental memorandum (# 70) is granted.

The motion of the United States for a protective order (# 66) is granted. IPCA may not produce information or documents within the scope of section 602.289 to Fireman's without leave from the FCA.

The motion of Fireman's to compel discovery (# 55) is granted in part and denied in part. The motion is granted as to documents which were generated in the ordinary course of business, whether before or after January, 1986, and which are not protected by a valid privilege other than the work product privilege. The motion is granted as to the Olson letter and exhibits. The motion is denied as to all other documents.

---

**7.** Fireman's also contends that it is entitled to the letter because Olson reviewed the letter while preparing for his deposition. This is true with respect to the letter, but the record does not indicate that Olson reviewed the exhibits in preparation for his deposition.