**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,**
Plaintiff,

v.

**MIDLAND BANCOR, INC.,**
et al., Defendants.

Civ. A. No. 93–2467–GTV.

United States District Court,
D. Kansas.

Dec. 23, 1994.

Benjamin F. Mann, Terrance M. Summers, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, and Mary Jo Barry, D'Amato & Lynch, New York City, for National Union Fire Ins. Co. of Pittsburg, Pa.

Richard D. Ralls, John W. McClelland, and Christine L. Schlomann, King, Burke, Hershey, Farchmin & Schlomann, Kansas City, MO, for Midland Bank.

John S. Torkelson, Resolution Trust Corp., Overland Park, KS, Richard T. Donovan, Patricia J. Heritage, Rose Law Firm, Little Rock, AR, and Anthony M. Whalen and Kimberly K. Noble, Fields & Brown, Kansas City, MO, for Resolution Trust Corp.

Charles A. Getto, Douglas M. Greenwald, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, and Eugene J. Comey, Katherine Connor Linton and Paul S. Rosenzweig, Comey, Boyd & Luskin, Washington, DC, for Federal Deposit Ins. Corp.

Richard D. Ralls, John W. McClelland, Christine L. Schlomann, Kansas City, MO, and Shawn E. DeGraff, Charles D. Lawhorn and David L. Polsley, Lawhorn, Simpson & Polsey, Kansas City, KS, for Country Hill Bank, Country Hill Bancshares, Inc., Phil R. Acuff, John W. Acuff, Erwin D. Rhodes, and Anthony C. Sommers.

Michael P. Joyce, Ronald D. Lee, James R. Wyrsch, Wyrsch, Atwell, Mirakian, Lee & Hobbs, Kansas City, MO, for Lee H. Greif.

William Grimshaw, Grimshaw & Rock, Chartered, Olathe, KS, Bruce C. Houdek, James, Millert, Houdek, Tyrl & Sommers, Kansas City, MO, for Ronald L. Blunt.

Gregory M. Garvin, and Thomas C. Brown, Brown, Nachman & Sader, P.C., Kansas City, MO, for Harold M. Sader.

Lawrence A. Rouse and Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for Bruce C. Rhoades, Phillip E. Forrest, Jon D. Grams, Ward A. Katz, Seymour Zeinfeld, Larry L. Campbell, Kendrick T. Wallace, Saul Ellis, Melvin Paul, and James W. Sight.

Charles F. Marvine, Jr. and Patrick M. Reidy, Dysart, Taylor, Penner, Lay & Lewandowski, P.C., Kansas City, MO, for Daniel F. Reardon.

Lawrence A. Rouse, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, Neil S. Sader, Thomas C. Brown, Brown, Nachman & Sader, P.C., Kansas City, MO, for Michael A. Azorsky.

Frederick H. Riesmeyer, II and J. Dale Youngs, Spradley & Riesmeyer, P.C., Kansas City, MO, for James M. Malouff, III, Jerome S. Metzger and Great American Development Corp.

Vito C. Barbieri, Hoskins, King, McGannon & Hahn, Kansas City, MO, for Wayne and Sandra Henry.

Gardiner B. Davis, Douglas M. Weems, Spencer, Fane, Britt & Browne, Kansas City, MO, for Vanguard Packaging, Inc.

W. Perry Brandt and Tammy L. Womack, Stinson, Mag & Fizzell, Kansas City, MO, for Deloitte & Touche.

Neil E. Sprague, pro se.

Stephen J. Bradford, pro se.

Stephen M. Tranckino, pro se.

Monte T. Grissom, pro se.

Michael A. Azorsky, pro se.

Gregory Kincaid, pro se.

*MEMORANDUM AND ORDER*

RUSHFELT, United States Magistrate Judge.

Before the court is Plaintiff's Motion To Compel Production of Documents From Defendants Midland Bank (Midland) and Midland Bank of Lenexa[1] (hereinafter collectively referred to as defendants) (doc. 266). Pursuant to Fed.R.Civ.P. 34 and 37, plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. seeks an order to compel defendants to produce all documents, including bank examination reports and reports of operation and condition, responsive to requests 8, 9, 11, and 13, of its Request for Production of Documents served on said defendants on March 11, 1994. Plaintiff also seeks reimbursement of costs and expenses incurred upon this motion. Defendants Country Hill Bank, John W. Acuff, Phil R. Acuff, Country Hill Bancshares, Inc., Erwin D. Rhodes, Anthony C. Sommers, Federal Deposit Insurance Company (FDIC), and Midland oppose the motion.

Request 8 seeks

all documents evidencing or pertaining to any knowledge or information known to or obtained by any Director, Officer, Institution, or Claimant during the period of April 1, 1992, through January 1, 1993, whether through its own inquiry and investigation, or from any other sources regarding any investigations, proceedings or actions taken by any federal or state agency regarding any Insured or the activities thereof.

Request 9 seeks

all documents evidencing or pertaining to any knowledge or information known to or obtained by any Director, Officer, Institution, or Claimant during the period of April 1, 1992, through January 1, 1993, regarding any acts, errors and omissions which might give rise to a claim under the Policy which was the subject of the Application.

Request 11 seeks "the minutes of each shareholders' meeting, board meeting, and com-

---

1. Defendant Midland Bank of Lenexa now does business under the name Country Hill Bank. The court will hereinafter refer to this defendant as Country Hill.

mittee meeting held by the Institution during the period of April 1, 1992, until January 1, 1993." Request 13 asks defendants to produce "all documents that you reviewed, referred to, relied upon, or otherwise used to assist you in preparing your answers to the Interrogatories."

In separate responses defendants objected to each of these requests by stating:

> This Request calls for the production of documents subject to attorney/client and work product privileges. This Request also calls for the production of documents which this Defendant is prohibited from producing for inspection and copying by federal and state law. Without waiving these objections, this Defendant will produce all documents not subject to a privilege and not protected by law which are responsive to this Request at a mutually convenient time subsequent to the entry of a protective order in this case by the Court.

Defendants later identified "bank examination reports" as those documents which federal and state law prohibit them to produce. In support of that objection they cite 12 C.F.R. §§ 261.8(a)(2), 261.14(b), 309.5(c)(8), 309.6(c), 309.7(c); Mo.Rev.Stat. §§ 361.070, 361.080; K.S.A. 9–1712; Op.Att'y Gen. 83–112 (Kansas 1983); *Cooperman v. One Bancorp (In re One Bancorp Sec. Litig.),* 134 F.R.D. 4 (D.Me.1991); and *State ex rel. Miller v. Crist,* 579 S.W.2d 837 (Mo.Ct.App. 1979).

Plaintiff contends that it can obtain bank examination reports through the discovery authorized by the Federal Rules of Civil Procedure. It submits that neither Missouri nor Kansas law prohibits such discovery. It also argues that Title 12 of the Code of Federal Regulations creates no absolute privilege against disclosure of examination reports. It contends they are relevant to whether defendants knew of any facts or circumstances leading to potential claims, when they applied for insurance. It further suggests that bank examination reports may be the only source of objective information about conditions at Midland and Country Hill during the relevant time period.

Plaintiff characterizes the issue as whether the court can order defendants to produce relevant documents, notwithstanding their confidential classification by a federal agency. It also refers to a prospective protective order, to which defendant FDIC has agreed to preserve their confidentiality. It suggests that the order adequately protects the interest of the Division of Supervision of the FDIC. It thus sees no reason to follow circuitous regulatory procedures to obtain the requested documents from the FDIC.

Defendants argue that state and federal law prohibit them from disclosing bank examination reports to plaintiff. They suggest the motion is premature for her failure to exhaust administrative remedies to get them. They claim, furthermore, that they would incur civil and criminal penalties for disclosing exempted information without proper administrative authorization. They suggest, moreover, that a protective order would not relieve them of statutory responsibilities to withhold the documents.

Subject to the proposed protective order, defendant Midland agrees to produce state examination materials responsive to the requests. It explains that earlier production was impossible, because the Missouri Director of Finance had not granted it authority to produce them. It now has such authority. It re-asserts, however, its objections of work product and attorney-client privilege. It proposes to provide plaintiff with a privilege log, itemizing the particular documents subject to these privileges. It suggests that any further discussion of such privileges is premature.

Defendant FDIC, as receiver for Midland Bank of Kansas and College Boulevard National Bank, responds to the motion only to describe a limit upon its agreement to a protective order and stipulation. It suggests that its authority as receiver for "closed banks" includes no direct role in the supervision of open banks, such as defendants. It asserts that the Division of Supervision of the FDIC oversees the operations of open banks and would determine any availability of the bank examination reports to defendants. Defendant FDIC explains that the

Division of Supervision has sole custody or control of the reports for the open banks.

FDIC as receiver thus argues that the reliance of plaintiff upon its agreement to a protective order is misplaced. Defendant contends it has no authority as receiver to bind or act for the Division of Supervision. It explains that, as receiver, it acts independently from the FDIC in its corporate, governmental capacity. It submits that courts have recognized a "separate capacities" doctrine under which FDIC as receiver is distinct from FDIC as regulator. It suggests that it bound itself only in the capacity of receiver to the proposed protective order and stipulation, and not on behalf of the Division of Supervision of the FDIC. Defendant FDIC thus asserts that its agreement to a protective order has no substantive significance to the underlying issue of discoverability of the documents.

Any analysis of discovery issues relating to requests for production of documents begins with Fed.R.Civ.P. 34. The rule provides in pertinent part that

> [a]ny party may serve on any other party a request (1) to produce and permit the party making the request ... to inspect and copy, any designated documents ... which constitute or contain matters within the scope of [Fed.R.Civ.P.] 26(b) and which are in the possession, custody or control of the party upon whom the request is served.

"This rule is designed to permit 'the broadest sweep of access.'" *Versatile Metals, Inc. v. Union Corp.*, No. CIV.A. 85–4085, 1986 WL 8720, at *1 (E.D.Pa. Aug. 8, 1986). It "is sufficiently flexible to be adapted to the exigencies of particular litigation. The propriety of the use to which it is put depends upon the circumstances of a given case." *Societe Internationale Pour Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 206, 78 S.Ct. 1087, 1092, 2 L.Ed.2d 1255 (1958).

> Rule 34 has been liberally construed to facilitate the discovery process. However, "the breadth of Rule 34 of course does not mean that every document is ipso facto discoverable."

> Production may only be required if the documents are in the possession, custody or control of the party upon whom the request was served.

*Estate of Young v. Holmes,* 134 F.R.D. 291, 293–94 (D.Nev.1991) (citation omitted).

■■■ Defendants cite *Cooperman* for its proposition that bank examination reports furnished to depository banks by the FDIC are not within the possession, custody, or control of such banks within the meaning of Fed.R.Civ.P. 34. The court based its holding on the fact that regulations of the FDIC "explicitly state that its reports and documents remain the property of the FDIC and that they may not be released without its consent." *Cooperman,* 134 F.R.D. at 9. A more recent case disagrees with *Cooperman:*

> There is no ambiguity regarding the meaning of the phrase "possession, custody or control." The federal courts have universally held that documents are deemed to be within the possession, custody or control of a party for purposes of Rule 34 if the party has actual possession, custody or control of the materials *or* has the legal right to obtain the documents on demand.

*RTC v. Deloitte & Touche,* 145 F.R.D. 108, 110 (D.Colo.1992). The ability to obtain documents on demand "is not affected by the source's retention of ownership or its unilaterally imposed restrictions on disclosure." *Id.* Parties in possession of documents forwarded to them by a federal agency which retains their ownership and restricts their disclosure, nevertheless, have possession, custody, or control of such documents within the meaning of Fed.R.Civ.P. 34. "[T]he problem presented here cannot be resolved satisfactorily by adopting a strained or tortured interpretation of Rule 34." *See id.* at 111. Agency regulations do not abrogate the Federal Rules of Civil Procedure, which govern discovery in federal court. The court presides over litigation governed by these rules of procedure, not administrative procedures of the executive branch.

That defendants possess responsive documents, however, does not necessarily resolve this dispute. Fed.R.Civ.P. 26(b)(1) allows "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Although no one suggests the responsive documents are

irrelevant, the question remains as to whether they are subject to a privilege. Defendants contend that state and federal law prohibit their disclosure of the requested reports. They further contend that the attorney-client privilege and work product doctrine protect them from discovery. They have otherwise agreed to produce all responsive "documents not subject to a privilege and not protected by law."

■ The court first addresses whether the attorney-client privilege or the work product doctrine protects any responsive documents from discovery. The burden of proving these privileges rests on the party raising them. *Colorado ex rel. Woodard v. Schmidt–Tiago Constr. Co.*, 108 F.R.D. 731, 734 (D.Colo.1985). "More broadly, the party seeking to invoke the[se] privilege[s] must establish all elements of the privilege[s]. This burden can be met only by an evidentiary showing based on competent evidence, and cannot be 'discharged by mere conclusory or ipse dixit assertions.'" *Bowne of N.Y. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y.1993) (citations omitted). "A party seeking to assert the[se] privilege[s] must make a clear showing that [they] appl[y]." *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir.1984), *cert. denied*, 469 U.S. 1199, 105 S.Ct. 983, 83 L.Ed.2d 984 (1985). To carry the burden, the party must give a detailed description of the documents to be protected "with precise reasons given for the particular objection to discovery." *State ex rel. Stephen v. Amoco Prod. Co. (In re Wyo. Tight Sands Antitrust Cases)*, No. 85–2349–S, 1987 WL 93812, at *1 (D.Kan. Sept. 11, 1987).

■ Although related and often invoked together, the attorney-client privilege and work product are distinctly different. *See Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau*, 150 F.R.D. 193, 196 (D.Kan. 1993). Despite their differences, courts narrowly construe them both. "[F]ederal courts narrowly construe *all* privileges, whether of constitutional, common-law, or statutory origin." *Everitt v. Brezzel*, 750 F.Supp. 1063, 1066 (D.Colo.1990). "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor

expansively construed, for they are in derogation of the search for the truth." *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974) (unanimous decision).

■ General allegations of privilege are insufficient to show that it exists. *Woodard*, 108 F.R.D. at 734. Fed.R.Civ.P. 26(b)(5), moreover, provides:

> (5) *Claims of Privilege or Protection of Trial Preparation Materials.* When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Defendants have shown nothing to indicate that either the attorney-client privilege or the work product doctrine applies to any of the requested documents. Identification of these privileges, as required by Rule 26(b)(5), would have been appropriate, not premature. The party claiming privilege and work product must substantiate such claims. Defendants here have not done so.

■ The court next addresses whether state or federal law provides a privilege against disclosing bank examination reports responsive to the requests. Although state law may prohibit disclosure of bank examination reports in some circumstances by certain individuals, it does not appear to make such documents privileged. Section 361.080 of Missouri Revised Statutes, entitled "Confidential information—penalty for disclosure—exceptions," provides that

> 1. The director of finance, his deputies, clerks, stenographers, each examiner and every employee shall be bound, under oath, to keep secret all facts and information obtained in the course of all examinations, except so far as the public duty of such officer requires him to report upon or take special action regarding the affairs of any bank, trust company or small loan

business, and except when he is called as a witness in any proceeding in a court of justice.

Section 9–1712(a) of Kansas Statutes Annotated deems "[a]ll information the state bank commissioner generates in making an investigation or examination of a state bank or trust company" to be confidential. Subsection (b) grants ownership of such information to the State of Kansas and prohibits "disclosure except upon the written approval of the state bank commissioner." Subsection (c) directs the commissioner to give ten days written notice to the affected bank of any intent to disclose. Subsection (d) provides the affected bank with an opportunity to object to any disclosure. Subsection (f) sets forth the penalty for "any person who violates this section." The term "bank" as used in the state bank code of Kansas, K.S.A. 9–1701 to 9–1724, means "a state bank or trust company incorporated under the laws of Kansas." K.S.A. 9–1719.

Kansas law applies to defendant Country Hill as it is incorporated under such law. (See Compl., doc. 1, ¶ 4; Answer and Counterclaim, doc. 58, ¶ 4.) Missouri law, however, applies to defendant Midland, because it is incorporated under the laws of that state. (See Compl., ¶ 10; Answer and Counterclaim, ¶ 10.)

█ Courts have apparently yet to interpret K.S.A. 9–1712 or Mo.Rev.Stat. §§ 361.070 and 361.080. The Commissioner of Finance for Missouri states, however, that Mo.Rev.Stat. §§ 361.070 and 361.080 do not prohibit disclosure by a bank. He explains that these sections prohibit him from releasing confidential information, but do not prohibit banks from disclosing bank examination reports in their possession. Banks may release such documents. The Commissioner simply advises them to obtain protective orders to prevent widespread dissemination of their contents. (See Letter from Manning to Summers of 10/14/94, attached to Supplemental Mem. in Supp. of Pl.'s Mot. To Compel Production of Docs. From Defs. Midland Bank and Midland Bank of Lenexa.) This advice seems consistent with the statute. The court concludes, therefore, that Mo.Rev. Stat. §§ 361.070 and 361.080 do not prohibit

disclosure by banks possessing bank examination reports prepared by an agency of the state of Missouri.

The court also concludes that K.S.A. 9–1712 does not prohibit banks from disclosing information within their possession and generated by the state bank commissioner of Kansas in making an examination or investigation of a bank. Within

the original act which established the present state banking code (L.1947, ch. 102), K.S.A. 9–1712 states as follows: 'All information which the commissioner shall gather or record in making an investigation and examination of any bank or trust company shall be deemed to be confidential information, and shall not be disclosed *by the commissioner or any assistant, or examiner, or employee thereof,* except to the attorney general when in the opinion of the commissioner the same should be disclosed, and except as otherwise provided by this act.'

Op.Att'y Gen. 83–112 (Kansas 1983) (Text on WESTLAW, 1983 WL 178890) (emphasis added). The court finds no indication K.S.A. 9–1712 purports to prohibit persons other than the commissioner or his employees from disclosing information generated in examining or investigating a state bank. The statute directs that notice be given to any affected bank when the commissioner intends to disclose confidential information. *See* K.S.A. 9–1712(c). The bank then may object to such disclosure. *See* K.S.A. 9–1712(d). Such procedure restricts the ability of the commissioner to disclose information, not the ability of banks to do so.

█ The Kansas statute characterizes bank examination reports simply as confidential. It provides no procedure for obtaining permission to disclose. Documents which are merely confidential "are not absolutely protected from discovery." *Koch v. Koch Indus., Inc.,* No. 85–1636–C, unpublished op. at 1 (D.Kan. Dec. 20, 1988). To restrict discovery of such documents, the responding party or person may move for a protective order. Fed.R.Civ.P. 26(c). "It is the burden of the party resisting discovery to establish that the information sought is confidential

and that disclosure might be harmful." *Koch,* at 1.

Defendants have not moved for a protective order. Nor have they otherwise shown good cause for one. Nor have they shown any other prohibition imposed by the State of Kansas against disclosure. K.S.A. 9–1712 does not create a privilege against discovery of bank examination reports prepared by an agency of the State of Kansas.

■ The court next addresses whether federal law prohibits discovery of responsive documents. Defendants claim 12 C.F.R. §§ 261.8(a)(2), 261.14(b), 309.5(c)(8), 309.6(c), and 309.7(c) prohibit the production of responsive bank examination reports.

Congress has given federal agencies the right to enact certain "housekeeping rules" to govern the disclosure of agency information. *See* 5 U.S.C. § 301. Section 301 provides that

[t]he head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

The housekeeping rules enacted by the Board of Governors of the Federal Reserve System (hereinafter simply referred to as the Board) and the FDIC are found at 12 C.F.R. Parts 261 and 309, respectively.

Part 261 of Title 12 of the Code of Federal Regulations governs availability of information of the Board. Its purpose is to "set[ ] forth the kinds of information made available to the public, the rules of procedure for obtaining documents and records, and the rules of procedure with respect to confidential information." *Id.* § 261.1(b). Section 261.6 lists the types of records available to

the public upon request. Section 261.8(a) lists "the records and information of the Board [that] are exempt from disclosure."[2] This list includes

> *Examination, inspection, operating, or condition reports, and confidential supervisory information.* Any matter that is contained in or related to confidential supervisory information prepared by, on behalf of, or for the use of the Board, any Federal Reserve Bank, or any Federal or state financial institution supervisory agency that deems such documents or information confidential.

*Id.* § 261.8(a)(2).

Section 261.13 governs the availability of confidential information for use in litigation.

> It is the Board's policy regarding confidential supervisory information that such information is confidential and privileged. Accordingly, the Board will not normally disclose this information to the public. The Board, when considering a request for disclosure of confidential supervisory information under this section, will not authorize disclosure unless the person requesting disclosure is able to show a substantial need for such information that outweighs the need to maintain confidentiality.

*Id.* § 261.13(a). Subsection (b) sets forth the procedure for requesting such information. Subsection (e) prohibits other disclosure.

> All confidential supervisory information made available under this section shall remain the property of the Board. Any person in possession of such information shall not use or disclose such information for any purpose other than that authorized by the General Counsel of the Board without his or her prior written approval.

*Id.* § 261.13(e). In pertinent part § 261.2(b) defines confidential supervisory information as

> reports of examination and inspection, confidential operating and condition reports,

2. *"Information of the Board* means all information coming into the possession of the Board, any Board member, any Federal Reserve Bank, or any officer, employee, or agent of the Board or of any Federal Reserve Bank, in the performance of functions for or on behalf of the Board." 12 U.S.C. § 261.2(c). *"Records of the Board* includes [all items] that are under the control of the Board, that contain information of the board, and that ... [c]onstitute part of the Board's official files or ... [a]re maintained for administrative reasons in the regular course of business...." *Id.* § 261.2(d)(1).

and any information derived from, related to, or contained in them. *Confidential supervisory information* may consist of documents prepared by, on behalf of, or for the use of the Board, a Reserve Bank, a Federal or state financial institutions [sic] supervisory agency, or a bank or bank holding company.

Section 261.14, furthermore, provides:

Unless the Board has authorized disclosure of the information requested, any person who has Board information that may not be disclosed, and who is required to respond to a subpoena or other legal process, shall attend at the time and place required and decline to disclose or to give any testimony with respect to the information, basing such refusal upon the provisions of this regulation. If the court or other body orders the disclosure of the information or the giving of testimony, the person having the information shall continue to decline to disclose the information and shall promptly report the facts to the Board for such action as the Board may deem appropriate.

"Like the Federal Reserve Board, the FDIC has adopted a comparable approach with respect to the prohibition against disclosing information relating to its examination report." *Feinberg v. Hibernia Corp.,* No. CIV.A. 90–4245, 1992 WL 54738, at *5 (E.D.La. Mar. 9, 1992). Part 309 of Title 12 of the Code of Federal Regulations governs disclosure of information maintained by the FDIC. Section 309.5 lists the information available upon request from the FDIC. Subsection (c) of § 309.5 sets forth information which is exempt from disclosure. Section 309.5(c)(8) specifically exempts "[r]ecords contained in or related to examination, operating, or condition reports by or on behalf of, or for the use of, the FDIC or any agency responsible for the regulation or supervision of financial institutions" from disclosure. A footnote to § 309.5(c) states:

Classification of a record as exempt from disclosure under the provisions of § 309.5(c) shall not be construed as authority to withhold the record if it is otherwise subject to disclosure under the Privacy Act of 1974 (5 U.S.C. 552a) or other Federal statute, any applicable regulation of FDIC

or any other Federal agency having jurisdiction thereof, or any directive or order of any court of competent jurisdiction.

Section 309.6 governs disclosure of exempt records. Subsection (a) provides:

The provisions of § 309.6 apply to any records which are exempt from disclosure under § 309.5(c) regardless of the fact that such records may be subject to disclosure under the Privacy Act of 1974 (5 U.S.C. 552a) or other Federal statute, any applicable regulation of the FDIC or any other Federal agency having jurisdiction thereof, or any directive or order of any court of competent jurisdiction.

In pertinent part § 309.6(c) authorizes disclosure as follows:

Exempt records of the [FDIC] may be disclosed in accordance with the following conditions and requirements.... In any instance in which copies of FDIC reports of examination or other confidential records are furnished under the provisions of this § 309.6(c), all copies of the reports of examination and other information so furnished shall remain the property of the [FDIC] and under no circumstances shall the individual, concern or agency (or any director, officer, employee or agent of the foregoing) disclose or make public in any manner the reports or exempt records without express written authorization from the Director of the [FDIC's] Division of Supervision as provided in § 309.6(c)(7).

Section 309.6(c)(7) grants the Director of the FDIC's Division of Supervision discretion to

authorize any director, officer, employee, or agent of a depository institution to disclose copies of any report of examination or other exempt record in his custody to anyone who is not a director, officer or employee of the depository institution. Such authorization may be given only in response to a written request from the party seeking the record or from management of the depository institution to which the report or record pertains.

Section 309.7(c) provides, furthermore, that

[a]bsent the authorization of the [FDIC's] General Counsel (or anyone designated by him in writing) to disclose the requested

information, any officer, employee, or agent of the [FDIC] (or any person having custody of exempt records of the [FDIC] who is not an officer, employee, or agent of the [FDIC] ), who is required to respond to a subpoena, court order, or other legal process, shall attend at the time and place therein specified and respectfully decline to produce any such record or give any testimony with respect thereto, basing such refusal on this section.[3]

Parts 261 and 309 of Title 12 of the Code of Federal Regulations thus prohibit disclosure of certain information of an agency without its prior approval. The Supreme Court has recognized the authority of department heads to restrict disclosure by these types of regulations. *See United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951). *Touhy* considered a rule of the Justice Department that required its employees, when served with subpoenas, to immediately report it to the Attorney General and refuse to obey the subpoena if so instructed by him. The Court held this housekeeping regulation valid. *Id.* at 464, 71 S.Ct. at 417–18. The opinion implies that the regulation provided the employee with a governmental privilege to refuse to obey the subpoena. This District has interpreted the opinion as "provid[ing] the employee with an absolute privilege to refuse to obey the subpoena." *Cox v. United Bhd. of Carpenters & Joiners of Am., AFL–CIO,* Nos. 91–2358–KHV, 92–2331–KHV, 1993 WL 244963, at *1 (D.Kan. May 27, 1993).

The Tenth Circuit Court of Appeals and the District of Kansas have recognized this privilege. *See id.; United States Steel Corp. v. Mattingly,* 663 F.2d 68 (10th Cir.1980);

*Saunders v. Great W. Sugar Co.,* 396 F.2d 794, 795 (10th Cir.1968); *Tholen Supply Co. v. Continental Cas. Co.,* 859 F.Supp. 467 (D.Kan.1994); *Herr v. McCormick Grain– The Heiman Co.,* No. 92–1321–PFK, 1994 WL 324558 (D.Kan. June 28, 1994).[4] Other precedent from the District of Kansas, moreover, reveals that regulations similar to 12 C.F.R. Parts 261 and 309 "have been held valid and prohibit the production of the examination reports by [financial institutions, such as defendants]." *Colonial Sav. & Loan Ass'n v. St. Paul Fire & Marine Ins. Co.,* 89 F.R.D. 481, 483 (D.Kan.1980). The legality of regulations such as these "has survived judicial scrutiny." *In re The Knoxville News–Sentinel Co.,* 723 F.2d 470, 477 (6th Cir.1983).

Citing *Colonial Sav. & Loan Ass'n,* one court has asserted that "federal courts have consistently ruled that a court may not order an institution such as [a production credit association] to produce information in violation of regulations such as 12 C.F.R. § 602.289." *Interstate Prod. Credit Ass'n v. Fireman's Fund Ins. Co.,* 128 F.R.D. 273, 276 (D.Or.1989). Part 602 of the Code of Federal Regulations is substantially similar to 12 C.F.R. Parts 261 and 309. They all prohibit disclosure of information belonging to an agency, without its prior approval. "[T]o secure information within the scope of regulations such as section 602.289 [ (or 12 C.F.R. Parts 261 and 309) ], a litigant must comply with agency regulations regarding discovery requests. If the agency refuses to produce the information after completion of this process, the litigant may move to compel production by the agency." *Interstate Prod. Credit Ass'n,* 128 F.R.D. at 276 (citations omitted). When federal agencies promulgate

---

**3.** Although the footnote to 12 C.F.R. § 309.5(c) and §§ 309.6(a) and 309.7(c) appear internally inconsistent, they are consistent. The court addresses this issue further in footnote 4.

**4.** With *Saunders* in 1968, the Tenth Circuit held the privilege applicable even though Congress modified 5 U.S.C. § 301 (then 5 U.S.C. § 22) seven years after the *Touhy* case to add the phrase: "This section does not authorize withholding information from the public or limiting the availability of records to the public." The added phrase addresses the availability of documents and information, not the ability of the agency head to withdraw from subordinates or

those outside the agency the power to disclose such documents or information. *See Tholen Supply Co.,* 859 F.Supp. at 469 n. 2. The added phrase simply highlights the intent of Congress that there be no absolute privilege against disclosure for the head of the agency. The similar phrase contained in 12 C.F.R. § 309.5(c) n. 4 likewise addresses the ultimate availability of documents and information, not the ability of the agency head to restrict disclosure of certain agency information by subordinates or those outside the agency. Thus, the footnote is consistent with 12 C.F.R. §§ 309.6(a) and 309.7(c).

**572**

official regulations, setting forth procedures to obtain information otherwise exempt from disclosure, the party seeking it may obtain it, if at all, only after following those procedures. *See Colonial Sav. & Loan Ass'n,* 89 F.R.D. at 484.

 Notwithstanding comments of counsel at the Preliminary Pretrial Conference of November 29, 1994, the court cannot find that plaintiff has completed any procedure for obtaining the reports it seeks, as set forth in the regulations promulgated by the FDIC and the Board. *See* 12 C.F.R. §§ 261.13 and 309.6(c)(7). When the party seeking documents has not completed the proper procedures, "it is unnecessary for the Court to pursue a balancing test to determine if the information sought is confidential or privileged and whether or not such information should be disclosed. Such determination will be made [only] when production is sought from the [agency]." *See Colonial Sav. & Loan Ass'n,* 89 F.R.D. at 484. Courts simply deny motions to compel information exempted from disclosure by federal regulations when the moving party has not completed the procedures outlined in the regulations for obtaining such information. *Id.* The court, therefore, overrules the present motion to compel to the extent it seeks information exempted from disclosure by 12 C.F.R. Parts 261 and 309 for the failure of plaintiff to complete procedures set forth therein for obtaining such information.

The motion fails for an additional reason. Plaintiff has moved only to compel defendant depository banks, and not the FDIC or the Board, to produce the requested documents. The court declines upon this motion to order the defendant banks to produce documents exempted from disclosure by 12 C.F.R. Parts 261 and 309. *See Interstate Prod. Credit Ass'n,* 128 F.R.D. at 276. The court does not here address what duty, if any, may be imposed upon the FDIC or the Board to produce such documents.

Plaintiff's cited authorities for allowing disclosure are not consistent with established precedent of the Tenth Circuit Court of Appeals and the District of Kansas. Its citations, furthermore, are distinguishable. In some cases the party seeking discovery

sought to compel the agency itself to produce certain documents. Here, on the other hand, plaintiff seeks to compel production directly from depository banks, rather than the FDIC or the Federal Reserve Board. In other cases the party seeking discovery was a Trustee in Bankruptcy acting pursuant to Bankruptcy Rule 2004. Rule 2004 is not pertinent here.

For the foregoing reasons, the court overrules in part and sustains in part Plaintiff's Motion To Compel Production of Documents From Defendants Midland Bank and Midland Bank of Lenexa (doc. 266). Defendants shall produce all documents responsive to requests 8, 9, 11, and 13 of Plaintiff's Request for Production of Documents served on March 11, 1994, except for those documents that they are prohibited from disclosing by 12 C.F.R. Parts 261 and 309.

IT IS SO ORDERED.