PHYSICIANS RECIPROCAL
INSURERS, Petitioners,

v.

Mario CUOMO, in his capacity as Governor of the State of New York, and James P. Corcoran, in his capacity as Superintendent of the Department of Insurance of the State of New York, Respondents,

Alliance of American Insurers, National Association of Independent Insurers, New York State Insurance Association, Allstate Insurance Company, Liberty Mutual Insurance Company, Lumbermens Mutual Casualty Company, Metropolitan Property and Liability Insurance Company, Utica Mutual Insurance Company, and Richard C. Van Essendelft, Intervenors–Respondents,

ADMINISTRATORS FOR THE
PROFESSIONS, INC.,
Petitioner,

v.

Mario CUOMO, in his capacity as Governor of the State of New York, and James P. Corcoran, in his capacity as Superintendent of the Department of Insurance of the State of New York, Respondents,

Alliance of American Insurers, National Association of Independent Insurers, New York State Insurance Association, Allstate Insurance Company, Liberty Mutual Insurance Company, Lumbermens Mutual Casualty Company, Metropolitan Property and Liability Insurance Company, Utica Mutual Insurance Company, and Richard C. Van Essendelft, Intervenors–Respondents.

No. 89 Civ. 5610 (RPP).

United States District Court,
S.D. New York.

Feb. 9, 1990.

**470**

---

Edward K. Blodnick and Roy A. Heimlich, Blodnick Abramowitz Newman Schultz & Bass, Lake Success, N.Y., for petitioner, Administrators for the Professions, Inc.

Laurence M. Shanahan and Albert B. Lewis, Bower & Gardner, New York City, for petitioners, Physicians Reciprocal Insurers.

Frederic L. Lieberman, August L. Fietkau, and Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for respondents.

Kenneth R. Feinberg, Kaye Scholer Fierman Hays & Handler, Washington, D.C., for intervenors-respondents.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge:

These are actions by petitioners to enjoin permanently New York State officials from disclosing certain information without a hearing. The documents at issue pertain to and are derived from the State's examination of the insurance operations of Physicians Reciprocal Insurers (PRI), a medical malpractice insurer for whom Administrators for the Professions, Inc. (AFP) is attorney-in-fact and manager of operations.

### Background

In August 1989, petitioners brought separate actions in New York State Court seeking to prevent the respondents, Governor Cuomo and Insurance Superintendent Corcoran, from providing copies of documents on the affairs of PRI to the intervenor-respondents in connection with the discovery arrangements in *Alliance of American Insurers v. Cuomo*, No. 87 Civ. 0169 (S.D.N.Y.) [hereinafter *Alliance II*].[1] The intervenor-respondents are the plaintiffs in *Alliance II*.

New York State Supreme Court Justice David B. Saxe denied PRI's petition for a temporary restraining order because PRI failed to "demonstrate[ ] entitlement to" the entrance of a writ of prohibition against the State. *See Physicians Reciprocal Insurers v. Cuomo*, No. 17997–89 (N.Y.Sup.Ct. Aug. 17, 1989). On August 21, 1989, respondents removed that action to this Court. That same week, AFP submitted an order to show cause in state court, *Administrators for the Professions v. Cuomo*, No. 18389–89 (N.Y.Sup.Ct. Aug. 24, 1989), and respondents removed the case to this Court before a hearing could be held.

The Court consolidated the actions on October 31, 1989 pursuant to Federal Rule of Civil Procedure 42(a). The parties have supplied the court with memoranda of law and presented oral arguments. There have been no requests for an evidentiary hearing.

### Discussion

As part of the resolution of the plaintiff's discovery requests in *Alliance II*, the parties entered into an agreement entitled "STIPULATION AND ORDER OF CONFIDENTIALITY." The Court approved

---

1. *See generally Alliance of American Insurers v. Cuomo*, 854 F.2d 591 (2d Cir.1988).

said stipulation on May 12, 1989. In part the stipulation provides:

2. Defendants [Governor Cuomo and Superintendent Corcoran] may designate as confidential documents produced by defendants for inspection and copying and/or made a part of the record in this action, or any part thereof, which are or pertain to "Reports on Examination," for "any Malpractice Carrier," including draft or completed-but-not-adopted reports, and any backup or related materials such as memoranda, data summaries, work sheets, actuarial calculations or correspondence about the reports (hereinafter "Designated Materials"). Prior to disclosure, such Designated Materials shall be marked confidential by defendants.

3. Designated Materials obtained in this litigation shall be used only for purposes of prosecuting or defending this action and shall be disclosed only to those persons identified in paragraphs 4 and 7 below[: the judiciary, the parties' attorneys, the consultants retained or designated by the attorneys, the clerical and paralegal staffs, the litigation steering committees, and such persons to whom each member of the steering committee normally reports developments in the litigation.]

\* \* \* \* \* \*

9. The execution of this Stipulation shall not:

\* \* \* \* \* \*

b. be construed as a waiver of any privilege other than Section 311 of the New York Insurance Law that may be available as to any Designated Materials....

10. This Stipulation shall not be construed as defendants purporting to waive any privilege by any malpractice carrier. Notice of this Stipulation shall be given to such carrier by telecopier one day prior to its being submitted to the Court for approval.

11. Upon final termination of this action, plaintiffs shall assemble and return to defendants the Designated Materials....

On June 27, 1989, the Court approved another stipulation of the parties to *Alliance II.* That document provided in pertinent part:

(2)(a) The Department of Insurance will complete the presently underway examinations of the affairs, as of December 31, 1987, of all domestic medical malpractice insurers.... A copy of each Report on Examination will be provided to Plaintiffs at the same time it is provided to each respective medical malpractice insurer and will be treated by Plaintiffs as a confidential document subject to the Confidentiality Stipulations entered by this Court.... If a hearing is requested by any insurer, the Department will use its best efforts to conduct and conclude the hearing as soon ... as practicable. The Department will adopt (with or without modification) and file for public inspection, unless otherwise enjoined by the Supreme Court of the State of New York, all such Reports on Examination upon conclusion of any hearing, or if no hearing is requested, at the expiration of 10 days after receipt of notification of the acceptance of the report by the insurer.

(b) By October 1, 1990, the Department will provide Plaintiffs with the preliminary results of a Report on Examination prepared by the Department for every medical malpractice insurer which was found by the Report on Examination of that insurer provided to Plaintiffs as described in paragraph 2(a) to have a deficit.... The preliminary reports described in this paragraph, along with the information therein, will be treated by Plaintiffs as confidential and subject to the Confidentiality Stipulations entered by the Court....

New York Insurance Law §§ 309 and 310 grant the Superintendent broad authority to gain access to the records and to compile reports on companies. However, petitioners contend that the Superintendent

lacks the authority to release any documents to the *Alliance II* plaintiffs unless the Superintendent first adheres to the hearing requirement of § 311(b)(1):

> Before adopting any such report and filing it for public inspection, the superintendent shall notify the insurer or other person examined of its contents and shall afford such insurer or other person a reasonable opportunity to obtain further details and to demand a hearing with reference to facts, conclusions or recommendations therein contained.

The plain language of § 311(b) only requires a hearing before the release of a formally adopted report. The statute makes no reference to any procedural requirements before the release of pre-"adopted report" documents. *See Baldridge v. Shapiro*, 455 U.S. 345, 360, 102 S.Ct. 1103, 1112, 71 L.Ed.2d 199 (1982) (statute that creates a privilege against discovery "is to be strictly construed so as 'to avoid a construction that would suppress otherwise competent evidence.'") (quoting *St. Regis Paper Co. v. United States*, 368 U.S. 208, 218, 82 S.Ct. 289, 295, 7 L.Ed.2d 240 (1961)).

The requirement of a hearing only before the release of a formally adopted report, rather than before the release of any document whatsoever, protects the examined insurer against harm. Only a formally adopted report carries the authority and credibility of an official government publication. A hearing requirement is necessary, and perhaps required by the due process clause,[2] because of the heightened interests of the government, the examined insurer and the public in the accuracy of a report officially deemed "adopted." On the other hand, when a document is only being released with substantial confidentiality limitations and the information is not deemed to be officially adopted by the government, then the need for such a hearing is absent. The credibility of such "unadopted" documents released only for discovery purposes is left to the trier of fact

in the lawsuit and a pre-release hearing is not necessary to assure accuracy.

The Stipulation of June 27, 1989 ¶ 2(a) provides for a § 311 hearing before plaintiffs can receive a formally adopted report. There is no question that the provisions in the stipulations for the issuance of formally adopted reports to petitioners are consistent with § 311. Petitioners argue, however, that § 311 requires a hearing before *any* information is released to plaintiff.

Petitioners rely on *Shelley v. The Maccabees*, 27 F.R.D. 415 (E.D.N.Y.1961), one of the only cases to construe § 311. In *Shelley*, the Insurance Department had commenced an examination of plaintiff's insurance agency and the defendant had obtained a subpoena calling for the Department to produce certain documents in its possession. The Department moved to vacate and quash the subpoena duces tecum. None of the documents at issue in *Shelley* had been formally adopted pursuant to § 311. There was one document referred to by the court as "the final report on examination," *id.* at 417, but it had not yet been formally adopted: "hearings thereon are presently being conducted.... [and] said report has not yet been adopted nor filed for public inspection." *Id.* at 416.

The *Shelley* court decided that defendant was entitled to the production of the final—but not yet formally adopted—report, but that the defendant lacked an entitlement to receive the documents "used to compile data for preparation of a final report." *Id.* at 417. Thus, *Shelley* indicates that § 311 does not bar the release for discovery purposes of a report that has been completed, yet awaits formal, post-hearing adoption. This aspect of the holding is consistent with § 311(b)'s language which only requires a hearing before the release of a formally adopted report. Accordingly, *Shelley* does not conflict with that part of the stipulations which provides for the *Alliance II* plaintiffs to receive reports that have been served upon the insurer, are

---

**2.** Petitioners' papers do not assert a procedural due process violation under the United States    Constitution.

subject to a hearing and have not yet been officially adopted.

The second part of the *Shelley* holding bars the release of documents "used to compile data for preparation of a final report." *Id.* Petitioners' reliance on that part of the holding is misplaced. The *Shelley* court barred access to that portion of the discovery request because it was for

> pure work products of the State Insurance Department.... Such matter is confidential, privileged and not subject to production by subpoena. These preliminary memoranda and reports are strictly limited to the use and convenience of the State agency and are not of a public nature.

*Id.* The basis for that holding is a governmental privilege of the State Insurance Department, the party seeking to limit the extent of discovery in *Shelley.* That evidentiary privilege permits the government to withhold documentation of its "pre-decisional" or "deliberative process." *See Mobil Oil Corp. v. Dept. of Energy,* 520 F.Supp. 414, 416 (N.D.N.Y.1981) (citing *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150–51, 95 S.Ct. 1504, 1516–17, 44 L.Ed.2d 29 (1975)); *See also Russell v. Dept. of the Air Force,* 682 F.2d 1045 (D.C.Cir.1982). Since the State, its agencies and its officials are the only parties who can assert a governmental privilege, *see, e.g., Denny v. Carey,* 78 F.R.D. 370, 374–75 & n. 2 (E.D.Pa.1978), petitioners cannot rely on this privilege or *Shelley* to bar the *Alliance II* plaintiffs from obtaining discovery of documents "used to compile data for preparation of a final report."

### Conclusion

The Superintendent is lawfully authorized to release, without a hearing and in a confidential manner for discovery purposes, documents which have not yet been officially adopted. Accordingly, petitioners' motions for equitable relief fail as a matter of law. The Court will *sua sponte* enter a motion for summary judgment in favor of respondents, pursuant to Federal

3. In accordance with the spirit of Rule 56, petitioners may also request a hearing on the motion for summary judgment. Respondents and

Rule of Civil Procedure 56, unless petitioners submit papers [3] demonstrating that respondents are not entitled to summary judgment within ten days of notice of the entry of this decision.

SO ORDERED.

respondent-intervenors also are granted leave to submit papers and request a hearing on the motion for summary judgment.