**F.A.C., INC., D/B/A Financial Advisors and Consultants, Inc., Plaintiff,**

v.

**COOPERATIVA DE SEGUROS DE VIDA, et al., Defendants**

**No. CIV. 98–1592(JP).**

United States District Court, D. Puerto Rico.

July 21, 1999.

---

Etienne Totti–del–Valle, Totti & Rodriguez Diaz, San Juan, PR, Howard Charles, San Juan, PR, Ricardo L. Rodriguez–Padilla, Hato Rey, PR, for FAC, Inc. dba Financial Advisors and Consultants, Inc., plaintiffs.

Luis A. Plaza–Mariota, Hato Rey, PR, Esther Castro–Schmidt, Gaztambide & Plaza, Osvaldo Carlo–Linares, San Juan, PR, for Cooperativa de Seguros de Vida, Gabriel Dolagaray, Maria Cristina Ortiz, Jose A. Brull, Andres. Rodriguez, Arcilio Rivas, Daniel Santiago, defendants.

Howard Charles, San Juan, PR, for Jose Ramon Gonzalez, Antonio Marrero, William Soria, third-party defendants.

## OPINION & ORDER

PIERAS, Senior District Judge.

### I. Introduction and Background

The Court has before it the Parties Motion Requesting the Courts Assistance in Aid of its Jurisdiction (**docket No. 105**), Motion to Quash Subpoenas on Federal Bureau of Investigation (**docket No. 106**), Motion to Quash Subpoena Served on AUSA Jorge Vega–Pacheco (**docket No. 107**), Motion to Quash Subpoena Served on USA Guillermo Gil and AUSA Jorge Vega–Pacheco (**docket No. 108**), Opposition to Motion to Quash (docket No. 112) and Reply to Opposition to Motion to Quash Subpoenas (docket No. 115).

Plaintiff F.A.C., Inc. ("FAC") filed a Complaint against Cooperativa de Seguros de Vida ("COSVI"), Gabriel Dolagaray, María Cristina Ortiz, José A. Brull, Andrés Rodríguez, Arcilio Rivas, and Daniel Santiago on May 29, 1998, alleging causes of action under the civil RICO statute, 18 U.S.C. §§ 1961, 1962(c), and 1962(d). FAC has made several amendments to the Complaint, with the most recent filed on January 14, 1999 (Fourth Amended Complaint, docket No. 79). At the time the events described in the Complaint occurred, Plaintiff FAC was a consultant for the Department of Health. The Department of Health obtains Medicare funds from Defendant COSVI, as COSVI is the Medicare

fiscal intermediary for Puerto Rico and the Virgin Islands. The basis of FAC's Complaint is that COSVI employees sought kickbacks from FAC before it would deal with its reimbursement requests.

On August 10, 1998, Defendants filed a Counterclaim against FAC for libel, slander, and defamation based on FAC's dissemination of allegedly false information to the media. Defendants have also filed a Third–Party Complaint against José Ramón González, Antonio Marrero, William Soria, and other agents, employees, directors, officials, or representatives of FAC, for submitting false claims in their applications for reopening reimbursement claims. A Second Third–Party Complaint alleges that the above-mentioned Third–Party Defendants engaged in a conspiracy with the purpose of extorting bribes in order to obtain approval of reimbursement claims under civil RICO, 18 U.S.C. §§ 1962(a) and 1962(d).

On January 7, 1999, the Court met with Plaintiff and Defendants ("the Parties") for a Further Scheduling Conference, emphasizing that they should continue with the discovery schedule set forth in the original ISC Order (docket No. 27). At the initial ISC, held on August 27, 1998, the Parties had discussed their desire to acquire evidence from the FBI regarding the facts of the instant case, and in the ISC Order, the Court ordered the Parties to file a letter with the U.S. Attorney in accordance with 29 C.F.R. 16.22.

On September 4, 1998, the Parties sent a joint letter to U.S. Attorney Gil requesting the testimony of various special agents involved in the investigation of the instant case or any related documents. Virginia Buckles, identified as "Chief, Civil Litigation Unit 1" of the Department of Justice ("DOJ"), sent a letter to the Parties stating that the request for documents and deposition testimony was "effectively denied" because they had not provided a proper waiver or court order, a request in the form of a subpoena, order, or other demand. Buckles also stated that the request was estopped because it would reveal investigatory records compiled for law enforcement purposes.

On March 9, 1999, the Parties filed a Joint Motion Requesting the Issuance of Subpoenas for FBI Documents and Recordings as well as Pertinent Testimonies. The Court granted this motion on April 7, 1999, and issued the FBI subpoenas on April 14, 1999. On April 15, 1999, the Parties sent a letter to Guillermo Gil, Acting U.S. Attorney, notifying him that the Parties intended to depose various witnesses and sought documents related to the facts in the instant case. The subpoenas were served on April 19, 21, and 26, 1999, and on April 26 and 27, the U.S. Attorney's Office filed the instant motions to quash the subpoenas.

## II. Discussion

The United States' three separate Motions to Quash the subpoenas on the FBI Agents, U.S. Attorney Guillermo Gil, and Assistant U.S. Attorney Jorge Vega–Pacheco, all present essentially the same arguments in support of their position. First, the United States asserts that the Parties did not follow the pertinent regulations, specifically, 28 C.F.R. §§ 16.22(c)(d) and 16.24(b), in seeking the testimonial or documentary evidence. Thus, according to the United States, the subpoena's should be quashed for the failure to follow procedure.

The United States further contends that even if a proper request had been submitted, the FBI and U.S. Attorney are not authorized to disclose the requested information because, under 28 C.F.R. §§ 16.26, (1) it "would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired," and (2) would violate the "grand jury secrecy rule." Thus, the United States argues that the proper remedy for the Parties to challenge the decision is to file a separate lawsuit against the Department of Justice pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 701–06.

In their Opposition Motion, the Parties first assert that they complied with all the requirements of 28 C.F.R. § 16.22(c). In response to the United States' assertion of an investigatory and grand jury privilege, the Parties argue that the information requested

is essential to the instant case and does not compromise any investigation. Further, the testimony would be limited to determining the veracity of the conflicting testimony of Andrés Rodríguez and William Soria of who first suggested the bribes kick-backs.

### A. The Parties Request for Evidence in Accordance with Department of Justice Regulations

The Court first addresses the United States' contention that the Parties did not comply with the proper procedures when they requested documents and testimony from the FBI and the Department of Justice. According to the United States, the Parties did not wait for the U.S. Attorney to reply to their letter dated April 15, 1999 prior to serving the subpoenas, and thus, the subpoena should be quashed. Further, the United States asserts that pursuant to 28 C.F.R. § 16.22, the Parties should have submitted an affidavit instead of merely a letter requesting oral testimony and that the request itself does not sufficiently specify the information sought.

The Parties argue that they complied with the regulation because they (1) provided a letter or statement by an attorney of the party seeking the testimony; and (2) in addition to the letter provided additional documents including the Fourth Amended Complaint, Answers, Counterclaims, and Third Party Complaints. Finally, they assert that there is no requirement that they wait for the Department of Justice to respond to their request prior to seeking relief in court.

■ If a litigant fails to comply with administrative regulations in seeking testimony or documentary evidence from an agency prior to pursuing a court remedy, a court should quash the subpoena. *See United States v. Bizzard,* 674 F.2d 1382, 1387 (11th Cir.1982); *Davis v. Braswell Motor Freight Lines, Inc.,* 363 F.2d 600 (5th Cir.1966) ("Because of [the litigant's] failure to comply with the 'simple requirement' of seeking permission, the District Court should have granted appellant's motion to quash the subpoena.") This, however, is not a case in which a litigant went immediately to court and bypassed the agency's regulations by failing to seek the desired evidence first from the agency. Rather, as discussed above, the Parties in the instant case sent two letters, one on September 4, 1998 and another on April 15, 1999, to U.S. Attorney Gil regarding the testimonial and documentary evidence they sought. The September 4th letter asked the FBI to produce William Burk, Ann Costello, William Soul, and Gary Thorton, Jr., Special Agents of the FBI to testify in a deposition, as well as FBI documents related to the instant case. This request was denied on October 1, 1998. The April 15th letter additionally sought the testimony of U.S. Attorney Guillermo Gil, AUSA Jorge Vega Pacheco, and John Johnson, Supervisory Special Agent of White Collar Crime Squads.

■ When oral testimony is sought in a case in which the United States is not a party, the Department of Justice regulations require "an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by his attorney, setting forth a summary of the testimony sought and it relevance to the proceeding." 28 C.F.R. § 16.22(c). The court rejects the United States' contention that the Parties' request is flawed because it is in the form of a statement made through their attorney rather than an affidavit.

The regulation clearly provides that either an affidavit or a statement by a party or attorney is an acceptable method for requesting oral testimony from the DOJ, as long as it summarizes the testimony sought and relevance. Although the regulation indicates a preference for an affidavit rather than a statement, the statute allows for both means of requesting the information. The Court is unwilling to adopt the interpretation suggested by the United States, which would require the Court to quash the subpoenas because the Parties failed to indicate their reasons for not submitting an affidavit rather than a statement. The plain language of the regulation does not require such a showing.

■ The Court also rejects the United States' argument that the Parties should have waited until the Department of Justice responded before seeking the issuance of a subpoena. First, the Court notes that the

DOJ letter from Buckles, dated October 1, 1998, specifically states that the Parties' request for FBI testimony and documentary evidence is flawed, in part, because they failed "to submit [their] request in the form of a *subpoena,* order, or other demand from a state or federal court of competent jurisdiction." (Emphasis added). In addition, this letter also states that the request is "effectively estopped" by the prohibition of disclosure of documents related to FBI investigations. The Court construes this letter as not only a denial of the Parties' request, but also as indicating that further consideration or information will not be given without a subpoena or other court order.

Second, the cases cited by the United States do not support the proposition that the Parties need have waited for a further denial from the DOJ before seeking the issuance of a subpoena. The cases cited all deal with litigants who never made any administrative request prior to seeking relief in the courts. *See Braswell Motor Freight,* 363 F.2d at 603; *Marcoux v. Mid–States Livestock,* 66 F.R.D. 573, 577 n. 1 (W.D.Mo.1975). Thus, the cases support the proposition that a litigant must make an administrative request and comply with the pertinent regulations, but do not require the Parties to have disregarded the DOJ's own letter which informed them that they needed to submit a court-ordered subpoena.

Finally, the Court finds the Parties' requests to be sufficiently detailed so as to comply with the DOJ's regulation requiring a description of the relevance and a summary of the testimony and other information sought. The statements provided to the DOJ not only give a summary, but provide particular details regarding the testimony and specific documentary evidence. The relevancy of the information is stated—to determine the central issue of the case of whether a representative of FAC or COSVI sought bribes or kick-backs in relation to the reimbursement of Medicare funds.

## B. The Validity of the DOJ Regulations and United States' Assertion of Privilege

The United States next argues that the FBI, U.S. Attorney and AUSA are prohibited from testifying and authorizing the release of the requested documents because they are prohibited by DOJ regulations. A letter dated April 26, 1999 from Virginia Buckles prohibits the FBI from providing a response to the subpoenas, and United States Attorney Gil ordered AUSA Vega Pacheco not to provide any information through a letter dated April 27, 1999.

The United States relies on *United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951) for the proposition that the DOJ regulations are valid and that the Court cannot hold subordinate officers in contempt for failing to comply with a subpoena on the order of his superiors. In addition, the United States points to the policy concerns of conserving governmental resources and minimizing United States' involvement in controversial matters unrelated to official business when it is not a party, citing *Reynolds Metals Co. v. Crowther,* 572 F.Supp. 288, 290 (D.Mass.1982). The Parties emphasize that the information they seek is essential to resolving the main issue in the instant case and, thus, should be provided regardless of the regulations. They also note that there is no indication of an investigation involving any of the parties, and further, that the relevance of the grand jury secrecy rule is diminished if a grand jury is being convened outside of Puerto Rico.

The United States is correct in that the Supreme Court has upheld the validity of agency regulations, such as the DOJ regulations at issue, which allow agency heads to restrict the testimony of their subordinates even when faced with a court subpoena. *See Ragen,* 340 U.S. at 468, 71 S.Ct. 416; *see also Giza v. Secretary of Health, Education and Welfare,* 628 F.2d 748, 751–52 (1st Cir.1980). Nevertheless, such cases "do not purport to grant an absolute freedom to the executive to prevent use of department papers as evidence." *National Labor Relations Board v. Capitol Fish Co.,* 294 F.2d 868, 873 (5th Cir.1961). The *Ragen* case avoided the question of whether the agency head has the power to refuse a proper judicial demand for the production of evidence, and Justice Frankfurter's concurring opinion emphasized

that the regulation at issue was upheld on the narrow basis that demands to obtain evidence must be made upon the Attorney General. *See Ragen,* 340 U.S. at 472–73, 71 S.Ct. 416. Justice Frankfurter also noted that when such information is sought directly from the Department Head or Attorney General, he can respond by asserting a valid privilege. *See id.; Capitol Fish,* 294 F.2d at 873 (discussing implications of Frankfurter's concurrence).

As discussed by the Fifth Circuit in *Capitol Fish,* the Supreme Court's decision in *United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727, (1953), while not expressly conflicting with *Ragen,* "overrule[s] the suggestion in *Ragen* that the lack of service of process over the departmental head prevents a court from deciding whether evidence withheld by a subordinate is privileged." *Capitol Fish,* 294 F.2d at 874. Thus, the Fifth Circuit concluded that when a party's request for evidence or testimony is denied on the basis of a privilege, "the court must decide the question," and a regulation enacted pursuant to the agency's "housekeeping authority... cannot bar a judicial determination of the question of privilege or a demand for the production of evidence found not privileged." *id.* at 874–75; *see also Denny v. Carey,* 78 F.R.D. 370, 374 (E.D.Pa. 1978) (formal claim of privilege by agency conferred jurisdiction over matter); *McFadden v. Avco Corp.,* 278 F.Supp. 57, 58 (M.D.Al.1967) (citing *Capitol Fish* for proposition that court must decide privilege issue); (*Rosee v. Board of Trade of the City of Chicago,* 35 F.R.D. 512, 514–15 (N.D.Ill. 1964)) (privilege asserted by department head's instruction to subordinate to refuse discovery request and privilege claimed must be determined by court).

■ The Court finds the Fifth Circuit's decision in *Capitol Fish* and its progeny to be instructive in the instant case. The reasons given by the United States for the refusal to provide the testimonial and documentary evidence involve assertions of privilege. Thus, the United States' contention that the Court cannot properly examine the agency's reasons for the denial of evidence is incorrect. Under *Ragen, Reynolds,* and

*Capitol Fish,* the issue of the United States' assertion of privilege is properly before this Court.

■ The United States claims two privileges under 28 C.F.R. (b)(1) & (5), an investigatory privilege as well as a privilege pursuant to the grand jury secrecy rule. Neither of these asserted privileges is absolute, and thus, the United States must provide a basis for their privilege claim. *See Church of Scientology Int'l v. United States Department of Justice,* 30 F.3d 224, 235 (1st Cir. 1994) (government must provide basis for claim that releasing exhibits related to grand jury will implicate secrecy concerns protected by the grand jury rule); *United States v. Lilly,* 185 F.R.D. 113, 115 (D.Mass.1999) (citing *United States v. Cintolo,* 818 F.2d 980, 1002 (1st Cir.1987)) (investigatory privilege is a "conditional privilege" and thus, the Court must balance the public interest in nondisclosure against the needs of the litigant for access to the information).

■ Before the Court can determine the validity of the alleged privileges asserted by the United States, it must examine the evidence in camera. *See Capitol Fish,* 294 F.2d at 875 ("if the court wishes to scrutinize [the confidential evidence] to make sure, the evidence may be examined in camera"); *Gómez v. City of Nashua, New Hampshire,* 126 F.R.D. 432, 434–35 (D.N.H.1989) (discussing First Circuit preference for in camera review procedure when balancing interest of parties in a privilege determination); *Denny,* 78 F.R.D. at 374 (E.D.Pa.1978) (privilege claim necessitated close examination and in camera inspection of material).

Based on the above analysis, the Court hereby **SETS** an in camera hearing for **August 6, 1999, at 2:00 p.m.,** regarding the United States' assertion of privilege related to the testimony and documents sought by the parties in the Court-ordered subpoenas. In the FBI's Motion to Quash, the United States itself suggested that the Court hold an in camera hearing if it wanted further explanation of the FBI's determination, but asked that it be permitted to provide an employee of its choice, since the subpoenaed employees are not necessarily the most knowledgeable

and may not be geographically available. Thus, the United States may provide a knowledgeable FBI employee of its choice who is not listed in the subpoena at the in camera hearing.

## III. Conclusion

The Court finds that the Parties' request for evidence from the FBI, AUSA, and U.S. Attorney related to the instant case was not procedurally flawed, and thus, the Court will not quash the subpoenas on that basis. Before making a final ruling on the Motions to Quash, however, the Court will hold an in camera hearing to assess the United States' assertion of privilege. The Court emphasizes that it firmly believes in the principle articulated by Lord Hardwicke, that "the public has a right to every man's evidence." *Davis Enterprises v. United States Environmental Protection Agency*, 877 F.2d 1181, (3d Cir.1989) (Weis, J. dissenting) (citing U.S. Supreme Court cases that have reiterated Lord Hardwicke's "long-standing common law precept.") There are certainly exceptions to this maxim, such as valid privileges. Thus, the Court will carefully analyze the United States' claim of privilege at the in camera hearing in conjunction with its preference for the full disclosure of evidence.

**SO ORDERED.**